**Robert A. Stanard  #08757-081**
FULL NAME

_____
COMMITTED NAME (if different)

**Federal Correctional Institution**
FULL ADDRESS INCLUDING NAME OF INSTITUTION
**P.O. Box 5000**
**Sheridan, Oregon 97378**

_____
PRISON NUMBER (if applicable)

```
┌──────── FILED      ┌──────────┐
├──────── LODGED     │   MAIL   │
└──────── RECEIVED   └──────────┘

        AUG 30 2019

          AT SEATTLE
   CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                      DEPUTY
```

## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF WASHINGTON

**Robert Allen Stanard,**
**Pro Se,**

PLAINTIFF,

**Dr. Maria Dy, MD., Dan Sproul, Warden,**
**Mrs. McDermont H.S.A., K. Martinez PA,**
**Mary Mitchell Western Regional Dir.,**
DEFENDANT(S).
**et al.,**

CASE NUMBER

**19-CV-1400** RSM-MLP

_To be supplied by the Clerk_

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** _(Check one)_

☐ 42 U.S.C. § 1983
☒ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes   ☐ No

2. If your answer to "1." is yes, how many? _____**One**_____

   Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)  **It is in this Court. It pertains to violations to my constitutional rights, namely 1st, 5th, and 14th. It is still in the early stages. The Defendants have sought for summary judgement and dismisal for allegedly not exhausting other forms of grievences before filing the Bivens. However, I had exhausted my administrative remedy process as required by the P.L.R.A..**

a. Parties to this previous lawsuit:

Plaintiff    Robert Allen Stanard

Defendants    Special Investigative Agent Nolan, et al.,

b. Court    Western District of Washington at Seattle

c. Docket or case number    C19-0017-JLR-MAT

d. Name of judge to whom case was assigned    Judge Robart

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?)    Still Pending

f. Issues raised: Constitutional Violations  1st, 5th, and 14th

g. Approximate date of filing lawsuit:    Approximately February 2019

h. Approximate date of disposition    Unknown

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

   If your answer is no, explain why not

3. Is the grievance procedure completed? ☒ Yes   ☐ No

   If your answer is no, explain why not

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff    Robert Allen Stanard
                                                           (print plaintiff's name)

who presently resides at   FCI Sheridan P.O. Box 5000, Sheridan, Oregon 97378
                                       (mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
   FDC Sea-Tac Seattle, Washington
                                   (institution/city where violation occurred)

CIVIL RIGHTS COMPLAINT

CV-66 (7/97)

on (date or dates) __On or about March 2, 2018 and continues as this complaint is filed.__
            (Claim I)               (Claim II)            (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant __Mrs. McDermont__ is/was employed at _____ resides or works at
         (full name of first defendant)
         __FDC SeaTac__
         (full address of first defendant)
         __Health Services Administrator__
         (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
__She relied upon the Bureau policy to deny an adequate treatment that was available__

2. Defendant __Dan Sproul__ Is/was employed at _____ resides or works at
         (full name of first defendant)
         __FDC SeaTac__
         (full address of first defendant)
         __Warden__
         (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
__He relied upon the policy to deny treatment and that I was "pre-trial" even__
__though I had already been convicted.__

3. Defendant __Dr. Maria Dy, MD__ is/was employed at _____ resides or works at
         (full name of first defendant)
         __FDC SeaTac__
         (full address of first defendant)
         __Doctor, MD__
         (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
__She relied upon Bureau policy and set criteria to deny treatment when it__
__would have only taken twelve weeks to complete.__

4   Defendant   Ian Conners    Is/was _____ resides or works at
            (full name of first defendant)

            320 First Street, NW, Washington, D.C. 20534 _____
            (full address of first defendant)

            Administrator NAtional Inmate Appeals _____
            (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

He relied upon staff's reports, medical criteria that was outdated, medical records
that were severly outdated, and relied upon Medical Directors description of the Clinic
Practice Guidelines to refuse a viable treatment

5   Defendant   Mrs. Leen  IS/ Was _____ resides or works at
            (full name of first defendant)

            FCI Sheridan  Street address unknown _____
            (full address of first defendant)

            Health Services Administrator _____
            (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

She relies upon an invisible power to treat people the way she wants to with no real
regard to actual medical experience. She tries to act in a doctor capacity when
she is not licensed. She relies upon the protection of the government and  immunity
to treat the Plaintiff with Deliberate indifference to his serious medical needs.

6    Defendant    Unknown        is / was _____ resides or works at
                  (full name of first defendant)

                  320 First Street, NW, Washington, D.C. 20534 _____
                  (full address of first defendant)

                  Medical Director of the FBOP _____
                  (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

As a medical professional he/she knew the dangers and damages caused by the disease
of Hep c. He/She relied upon the Policy of BOP to refuse treatment.

7    Defendant    Unknown    Is /Was _____ resides or works at
                  (full name of first defendant)

                  7338 Shoreline Drive, Stockton, California 95219 _____
                  (full address of first defendant)

                  Is/ was Regional Medical Director _____
                  (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

He/She relied on the Clinical Practice Guidelines to deny a viable treatment

to a patient in which was under his/her care who suffered from a life altering disease

8) Defendant  J. Baltazar                    IS/WAS _____ resides or works at
   _____
   (full name of first defendant)

   Western Regional Office, 7338 Shoreline Dr., Stockton Ca. 95219
   _____
   (full address of first defendant)

   Western Regional Director    (in place of Mary Mitchell)
   _____
   (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

He relied upon a flawed policy to back up institutional staff in denying
the Plaintiff proper medical treatment. He also used old, outdated medical records
as facts to deny remedy in the administrative remedy process.

Defendant _____ resides or works at
          (full name of first defendant)

_____
(full address of first defendant)

_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

**D. CLAIMS***

CLAIM I

The following civil right has been violated:

Plaintiffs constitutional rights of 5th amendment to Due Process, 5th amendment to Equal Protections, 8th amendment to Cruel and Unusual Punishment, 14th amendment to equal protections as the state.

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

On or about March 2, 2018, I requested a BP-8 (informal resolution form) From counselor Erickson. Upon receiving such form, I completed it, handed it back to counselor Erickson. In my first BP-8 I stated that I would like to be treated for the Hep C. that I had been diagnosed with. I waited a reasonable amount of time for a response. After about two weeks I began to inquire to Mr. Erickson about 2 to 3 times a week for my response. His reply was always the same, "Just waiting for medical to respond to my email." When April came around, I asked Counselor Erickson for a response, good or bad so that I could advance my complaint and the violations to my constitutional rights in particular my 8th amendment right to be free from Cruel and Unusual Punishment. Counselor Erickson gave me a new BP-8 and directed me to fill it out, in which I did so immediately. The date on that one was April 4, 2018. The response finally came for this second BP-8 on May 13, 2018, again untimely. I had at one point before receiving a response to second BP-8, attempted to submit a formal BP-9 to the Warden without the BP-8

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

CIVIL RIGHTS COMPLAINT

CV-66 (7/97)

CONTINUATION OF FACTS FROM PAGE 5...

That BP-9 was rejected by the wardens office for not having the BP-8 attached to it. The same day that the rejected BP-9 was returned, my second BP-8 was also returned on this date, May 13, 2018. I resubmitted my BP-9 along with the BP-8 on May 13, 2018. The BP-9 was received by the administrative remedy coordinator on May 18, 2018. Attached to my BP-9 was a copy of my electronic request to staff (cop-out) to Dr. Dye, information that I had found regarding Hep. C, treatments, and cases where federal judges were getting involved and requiring state prison officials to give treatment to prisoners that were infected with Hep. C. I received a response to my BP-9 on or about May 24, 2018, dated May 22, 2018.

The response dated May 22, 2018 from the Warden Dan Sproul stated:

> "an investigation into this matter reveals that according to your Health Services Records, you are currently a treatment priority level 3 and a pre-trial inmate. The Federal Bureau of Prisons is currently focusing on treating priority level one and two level inmates. You will continue to be monitored closely by Health Services Staff.

During my grievance process and while I was attempting to exhaust this process as required by the P.L.R.A., I watched another inmate rapidly deteriorate from the very same disease. I had a chance to get to know this inmate by his name as Michael Doughty. I got to know him over the course of roughly 4 to 5 months. His registration number was #75259-083. I witnessed this man in the span of roughly three months wither away to about 80 pounds. You could litterally see bones sticking through his skin. It reminded me of a saying I once heard, "talk about a skeleton clothed with skin. Myself and other inmates spoke on Mr. Doughty's behalf several times with Unit Officers or Medical Staff to do some-thing for him. Some of the things we did were bring medical to his cell cause he was retaining so much fluid that he couldn't get up out of bed, told medical of the pain he was in, serviced him like he was in a hospice center of some sort.

CONTINUATION OF FACTS FROM PAGE 5...

I believe that his release date was in the first week of June 2018. He could barely get up to eat a meal. We, the inmates started to taske the food to him. We also told medical about his difficulty with eatting to where they finally gave him Ensure Protien drinks. There was even a time that Mr. Doughty was in such serious pain that he went to the officer and told him that he was in serious pain. The officer told him to stop faking and return to his cell. Upon hearing this, another inmate and myself approached the officer and demanded that he either contact medical for this inmate or we wanted to see the LT. We were near certain that Mr. Doughty was not faking his pain. He was visibly swelling in the abdominal area. He then fell onto the ground in agonising pain. It was then that the officer called a medical emergency over his radio. We would bring him water to drink, assist him in using the restroom. We spoke to the unit team about assisting in getting him a compassionate release. His only family that he talked about was a 90 year old mother. A short time later he began to get so bad that they had removed him from our unit and to the hospital. He never returned to out unit. We were told that while at the hospital he was put on comfort care and passed away just a few days later. He was just days away from his release date when he passed away to my understanding.

This had really caused psychological issues with me due to just watching someone die and unable to do anything for him. I spoke to Dr James (clinical pyschologist). I was distraught and I remember thinking that a Federal Agency is charged to keep it's inmates safe and alive, just let this guy die in what seemed like an inhumane manner.

I did appeal the Wardens decision of denial to the Western Regional Director within the (20) twenty days from the date of the response on the BP-9. My appealto the Western Regional Director's office dated 05/30/18 was received by the director's office on June 1, 2018.

CONTINUATION OF FACTS FROM PAGE 5...

I reiterated that I wanted the Hep. C treatment. I countered the Wardens response that I was a <u>pre-trial inmate.</u> By stating the truth. That truth was that I was no longer a <u>pre-trial inmate</u> but had been convicted at trial and past "pre-trial" status. I explained that I was at the minimum a hold over inmate in hold over status.

I made very clear the problems or issues that I deal with on a regular basis. I suffere from fatigue, Bloating in the abdominal area or swelling of my liver. Often times painful, and always needing to nap from the fatigue. I had started my appeal with the names of medical staff that I've spoken to in regards to my concerns, Dr. Dye, Mrs. K. Martinez, Warden Dan Sproul, the regional medical director. Their failure or the full fledge of medical indifference continues with their refusal treat and deny my access to a confirmed viable treatment for my infectious disease. A disease that detected during my previous incarceration with the Federal Bureau of Prisons.

I did not receive a response to my BP-10 until December 6, 2018 after I submitted my BP-11 to the Central Office which was dated October 7, 2018, received in the Central Office on October 19, 2018, Administrator National Inmate Appeals, Ian Conners. I received the response and denial dated November 13, 2018, received in the Wardens Office, November 19, 2018. I received on November 22, 2018 From Counselor Cray (FCI Sheridan). These dates are significant for the purpose of showing how the Federal Bureau of Prison's handles and interfers with the administrative remedy process that is required in order to seek relief.

Furthermore, during the month of August 2018, FBOP changed it's policy and criteria for treating inmates with the Hep. C. disease. They removed the actual biased criteria and "mandated" that everyone is to get the treatment that wants it. This was taken from the response of another inmates remedy response

CONTINUATION OF FACTS FROM PAGE 5...

to their BP-11 that he received on February 10, 2019. Inmate John Etzel
#76892-065 still has not been given treatment  (Please see attached BP-11).

In my BP-11, I layed out for the Central Office (D.C.) and for my
documentation that under title 42 U.S.C.S. § 1983, to prevail on a claim
of deliberate indifference, I only Three (3) elements to prove in order to
suceed on my claim.

In the response by Ian Conners, he relied on old, outdated medical
records to determine that in July 22, 2009 from a liver biopsy that I showed
a stage zero (0) fibrosis (no tissue/liver damage). I have asked multiple times
to see a specialist, imaging, or another biopsy to be preformed to determine
the correct diagnosis, and a more accurate one. Every real medical profesional
knows that the disease of Hep. C is a progressive one. Meaning that findings
over ten (10) year prior would be inconclusive to the ones taken prior.

I sent many request to staff (cop-out) regarding trying to obtain proper
and adequate medical treatment for my Hep. C. I'd spoke to Dr. Dye, K. Martinez,
and even the Health Services Administrator Mrs. McDermont.

When I spoke to Mrs. McDermont her short reply was that I didn't meet
the "criteria" set forth by the FBOP Clinical Practices Guidelines. Many times
I would never receive a response via the electronic Request, I found myself
talking to K. Martinez regarding my Hep. C. and treatment. I spoke to K.
Martinez in person on May 29, 2018 in Unit EC. She informed me that my APRI
does not meet the criteria of the FBOP. That I would continue being monitored
regularly. Being regularly monitored only means blood drawn every six months.
Nothing more.

In November 2017 my APRI was at a .6, January 2018 a .1 with a viral
load of 2,600,000. This clearly confirms that the APRI can and does fluxuate.

CONTINUATION OF FACTS FROM PAGE 5...

Thus, when it is elevated, it tends to do more damage to the liver than when at a .1.

I went to sick call on or about July 6, 2018, I spoke to P.A. D. Smith in regards to having a tough time swallowing. He refered me to an outside ENT Doctor. That request was approved by the Western Regional Medical Director. I went to the pre-op on or about September 4, 2018. At the pre-op it was explained to me what to expect during the procedure. Upon completion of the pre-op appointment, an appointment had been scheduled. However, before I could actually go to have the procedure done, I was transfered to FCI Sheridan.

It is here that I concluded that the FBOP will avert their responsabilities and duties to inmates health and well being. It was here that I started fresh with documenting my interactions with medical staff or the Health Services Administrator.

On or about September 25, 2018, during the receiving process of arriving to this institution, that I spoke to and met Mrs. Leen, the Health Services Administrator for FCI Sheridan. I explained all of my concerns that I'd been dealing with up at SeaTac. From the Hep. C. treatment, seeing the ENT Specialist for the dificulty swallowing. She had stated that policy has changed regarding the treatment of inmates with Hep. C.. That she has only been here at the institution for about two weeks and to please give her some time to get things implemented. (Think forward to the response given from Ian Conners just months later, stating that I don't meet the criteria).

Once, I was settled in the housing unit I'd been assigned to, I sent the Dr., Dr. Cantu a message on or about October 3, 2018 via the Electronic request to staff. I explained I was a new arrival and was seeking to see him or speak to him as soon as possible. I never received a response. I found out approx. ten (10) days later that Dr. Cantu was being replaced by a Dr. Grassely.

CONTINUATION OF FACTS FROM PAGE 5...

Upon learning this information I sent a cop-out on October 13, 2018 to Dr. Grassely with my three (3) medical concerns. I never received a response from Dr. Grassely via the electronic cop-out system. However, on November 14, 2018, I was listed on the call-out sheet for an appointment to see Dr. Grassely. (see copy of Journal sheet). I started of with explaining that I'd been in the process of exhausting my administrative remedy procees to get the Hep. C. treatment. At this appointment I told him that I'd like to see an ENT Specialist for the problem of swallowing that I've been having. I started to explain that my constitutional rights 6th, 8th, 10th, and 14th were being violated by the blatant refusal of the FBOP to begin treating me. He told me that I need not quote the constitution to him, that I could get the treatment if I wanted it. He did inform me that it wouldn't be immediately, but only a wait of about 60 days. He did state that I wasn't getting the treatment at SeaTac because I was a pre-trial inmate.

On or about November 10, 2018 I went to a Lab call-out (blood work) The first step to potentiall being treated, so I'd thought. On or about November 29, 2018 I managed to catcha glance at the computer screen in medical and could see that the APRI of my latest results which showed an extra elevated Level to a .27, which just six (6) months prior was only a .07. On January 29, 2019, I returned to sick-call again to find out if or when I would potentially be going to see an ENT. I also asked about my Hep. C. treatment and if there was any idea when I might get started on treatment. The staff member who I was speaking to (Mr. Bergman) said he did not know anything about it but would and did send an email to Dr. Grassely.

Even though from the begining of my grievence process, I was being denied a treatment that only would take 12 weeks, at that time, to irradicate the disease

CONTINUATION OF FACTS FROM PAGE 5...

for (1) being a pretrial inmate, (2) not meeting the FBOP APRI criteria, (3) A liver biopsy from July 22, 2009 (outdated Medical records) in which I was released from the Federal Bureau of Prisons custody in August 2010, reintegrated back into society for over five (5) years before returning to Bureau custody.

The policy that changed in August 2018 to include every inmate who wants treatment can get it, has been slow to implement. I have been here at Federal Correctional Institution, Sheridan since the last week of September of 2018. As of the last week of May 2019, I'd completed the eight (8) week treatment called Mavyret (Glecaprevir 40 mg tab). At just over half way through the treatment, I was tested. Those results showed that the disease had no longer been detected. This was at just 5 1/2 weeks into the treatment. Plenty of time to receive the treatment while still at SeaTac in all the months they spend finding or relying on policy to deny me the treatment.

It has been proven that Hep. C. is a silent killer. That the denial for over or lack thereof treatment for the period that I suffered going without being treated could have been used to treat me over six (6) times. At every level of the grievence process from institution to Central Office, I've been denied and each staff member who has participated in this process has been made aware of my life changing disease that left untreated causes unseen tissue damage, damage to organs such as liver, kidneys and even the esophagus. Damage occures on a daily basis when left untreated. The Bureau of Prison's deliberate and wanton affliction of pain and suffering has to be corrected. Pain caused from liver inflamation, causing me days of pain, bloating, and unable to eat from my liver pushing on my stomach, as well as causing esophageal varices, which can cause difficulty swallowing. I've asked on mulitple occassions to be seen by a specialist such as hepatologist, gastroenterologist, or Interventional radiologist. I Still have not seen any of them. It is still unknown to date to what extent

CONTINUATION OF FACTS FROM PAGE 5...

the damage I have truely suffered, especially since Mr. Ian Conners himself admits by
using a outdated medical record of a liver biopsy preformed in 2009.

It is due to my constant nagging and pushing or utilizing the administrative
remedy process that I did finally get treatment. The Bureau medical staff and
administrative staff had been deliberately denying any form of treatment to better my
way of life or health.

To establish the criteria that I, the Plaintiff must demonstrate (1) I have
a serious medical need. It is pretty simple to prove this element just by the series
of blood tests to confirm that I have/had a serious disease, (2) The Staff was deliberately
indifferent to that need. The Bureau and staff followed and relied upon the policy when
denying me a valid treatment, (3) The indifference caused harm. It has already been
proven that everyday that Hep. C. is left untreated, it causes irepairable and ireversible
damage. Following this policy was the moving force behind the staff being able to deny my
access to treatment and violate my rights to that treatment. Medical staff and admin.
staff failed to respond to the medical need. The last element to deliberate indifference,
is the seriousness of the prisoner's medical need. Leaving Hep. C. untreated is certainly
a serious need.

The Plaintiff does believe he has showed and met all the criterias for this court
to allow this complaint to move forward and even beyond a summary judgement when filed
by the defendants. The Plaintiff has exhausted the only avenue known and required by the
P.L.R.A. As futile as it was for the Plaintiff to even continue with the administrative
remedy process because of the Bureaus reliance on policy to deny proper and adequate
medical treatment, he continued, showing his diligence in seeking remedy.

The Plaintiff has asked to be seen by a gastroenterologist for a developing
issue with swallowing. On or about 05/24/18, Plaintiff sent an electronic request to
staff (Dr. Dy) seeking to be seen by a gastroenterologist, hepatologist, infectious
disease specialist, or transplant specialist regarding his Hep. C and receiving a viable

CONTINUATION OF FACTS FROM PAGE 5...

treatment. Plaintiff received a response by unknown staff on or about 05/27/18, only stating "wait for appointment." That appointment took place on or about 05/29/18 with Defendant K. Martinez. I again spoke to Defendant K. Martinez on or about 06/01/18. During this encounter she was "educating" me about the APRI and that I still did not meet the FBOP criteria due to my APRI level again going back down. Defendant Martinez also informed me that I will not win my battle of receiving treatment of my Hep. C. before I am designated and sent to my new facility. Defendant was clearly acting in a indifferent manner and knowingly violating right and access to proper medical treatment.

On or about 07/06/18 the Plaintiff submitted an additional request to Defendant Dr. Dy requesting to be seen and that I was having difficulties with swallowing, "regular sized bites. Sometimes feeling like it gets stuck." P.A. D. Smith had submitted the Plaintiff to be sen by the outside ENT. That request was approved by the regional medical director on or about 08/01/18. Plaintiff did go to a consult on or about 09/04/18. No procedure was done. When completed with the consult there had been an appointment scheduled to preform the procedure. Plaintiff was transfered out of FDC Seatac on or about 09/15/18 before the procedure could be preformed.

On or about 10/03/18, Plaintiff arrived at Federal Correctional Institution at Sheridan where he submitted an electronic request to a Dr. Cantu (who was no longer the attending physician) seeking treatment for my Hep. C., to see the infectious disease coordinator, a gastroenterologist for the difficulties with swallowing. He also explained that he was sheduled to be seen for a procedure before He was transfered. He never received a response from that request.

Upon arriving at the FCI, Sheridan, the Plaintiff began documenting each encounter with staff pertaining to any medical issues. This was done at the urging of another inmate named Lonnie Lillard # 27612-086 (please see attached declaration).

CONTINUATION OF FACTS FROM PAGE 5...

On or about 11/14/18, Plaintiff was listed on the call-out to see the Dr. @ 9a.m.

Plaintiff met Dr. Grasley where upon they discussed several issues that the

Plaintiff is concerned about. Issues ranged from Hep. c. treatment, gastroenterologist,

eye dr., and mentioned pain in his shoulder. The Plaintiff had stated to Dr. Grasley

the following:

> "I've been battling the FBOP now almost a year to get treatment
> for this Hep. C. To continue denying me is a violation of several
> constitutional rights. I'm nearing the end of my grienance process
> and will begin a lawsuit, as many Federal courts, and Judges are
> now getting involved with the prison systems denying adequate and
> proper medical care."

Doctor Grasley simply replied:

> "You don't have to recite the constitution to me. If you want the
> treatment I'll put you in for it. You haven't been able to get it
> because you were a pre-trial inmate. We are getting treatment ready
> for several people so it'll be a short wait, but you'll get it."

On or about 11/29/18, Plaintiff went to sick-call @ 9:30am after morning

fog count. He spoke to Mr. Bergman regarding the renewal of his prescriptions

that the Dr. had ordered for 180 days on 11/14/18, yet the pharmacy said had expired.

Mr. Bergman was very professional as was informative. He sent an email to the Dr.

regarding his concerns. However, the Plaiontiff was able to catch a peek at the

computer screen and could see that his latest blood work revealed and APRI of approx.

.27. Well enough inthe FBOP Criteria that was no longer as of sometime in August 2018,

(please see Administrative Remedy response by Ian Conners on inmate John Etzel

# 76892-065). In this response  dated, 02/04/19, it states:

> "The BOP expanded access to HCV treatment to all sentenced
> inmates in August 2018; however, institutions may continue to
> use the priority level system to prioritize their patients."

The Plaintiff has a response by Ian Conners dated 11/13/18, after this

policy change regarding the treatment of HCV, where Defendant Conners does

inform the Plaintiff that the policy has changed and relied on Plaintiffs prior

incarcerationed medical records as a means to deny the Plaintiff treatment.

CONTINUATION OF FACTS FROM PAGE 5...

This denial of treatment based on a mere liver biopsy performed in 2009 or an old ultrasound report from the same year is clear indifference to his medical needs.

On or about January 29, 2019, the Plaintiff returned to sick-call again and spoke to Mr. Bergman again about the swallowing issue and he read the Dr. Grasley's notes from 11-14-18. Took down my complaint of searing pain from acid reflux (gerd), again asked to be seen by a ENT Specialist for problem in which must be handled by Dr. Grasley. Mr. Bergman recommended to the Dr. a possible increase in the omeprizole or ENT. He also forwarded the notes of my concerns to the Dr. of the HEP.C. treatment interferring with the omeprizole. Igave 3 issues to Mr. Bergman that I was most concerned with; (1) swallowing issue, w/ severe acid reflux; (2) Still wanting HEP. C. Treatment and haven't received it yet (as of 01/29/19); (3)waiting to see the eye doctor.

On or about 02/27/2019, Plaintiff spoke to Mrs. Leen regarding his swallowing issue and taking the omeprizole. That the omeprizole doesn't mix with the Hep. C. medicine so when they do start it he would be without that medicine and wouldn't be able to take anything to counteract the acid reflux. She stated that I needed to send a cop-out to Dr. Grasley about scheduling a consult to see the ENT. The Plaintiff told Mrs. Leen that nobody ever responds to the electronic request to staff. She said to just give her one at mainline.

On or about 03/11/2019, the Plaintiff handed a cop-out to Mrs. Leen at mainline regarding the swallowing issue and having a procedure done before he was to start the Hep C. treatment.

On or about 04/07/2019, the Plaintiff started the Hep C. treatment that is called Mavyret. The only eight week cure.

On or about 04/15/2019, During evening pill call the Plaintiff spoke to paramedic Mr. Anderson about having more frequent difficulties with swallowing. He only said that there was nothing that he could do. Told me to be careful.

CONTINUATION OF FACTS FROM PAGE 5...

On or about 04/26/2019, During evening dinner and at approx. 5pm, in the presence
of inmates Nedrow, Johnson and himself, he began having serious problem getting
his meal to past completely through his esophagus. He tried to force it down
by swallowing additional water, the water just came immediately back up. Nothing
came up with it either. I could breathe, and still speak. It was scary. The
inmates that were with me walked over to medical with him. When arriving at
medical, he was just going to address the issue with Mrs. Eddings who was the
attending medical staff present during pill call. I still was unsure how I would
take my evening meds without being able to swallow them. A few short minutes
later Mrs. Weber was leaving from inside medical. I approached her in a calm,
respectful manner and explained to her what had happened. He also explained
that this very same issue has happened before and he had to go to the emergency
room to have the food pushed through. Mrs. Weber was very concerned. However,
Mrs. Leen also came out, Mrs Weber sought her attention. Mrs. Weber began to
explain to Mrs. Leen what He had told her, but Mrs. Leen cut off Mrs. Weber in
a rude and unprofesional manner and stated, "this is an ongoing problem. He
needs to come to sick-call on Monday." Mrs. Weber told Mrs. Leen again that she
might want to listen. So the Plaintiff began explaining the whole issue back to
Mrs. Leen and stating that his prior history was that the blockage would have
to be pushed through. He also reminded her of the cop-out that he had given her
at mainline back in 03/11/2019. Mrs. Leen stated that nothing can be done and
that he'd have to come back on Monday to sick-call. He tried pleading with Mrs.
Leen to have some compassion and to understand that he could not get anything
past the blockage. He even drank some water to show her what he was talking
about as the water immediately came back up in a vomiting type symptom. She
immediately stated that, "you're making yourself do that." My hands were completely
at his sides and in order to do that he'd have to put a finger down his throat
in order to throw up, which he did not do. Mrs. Leen then went into the pharmacy,

CONTINUATION OF FACTS FROM PAGE 5...

spoke to Mrs. Eddings, looked at his medical records to confirm that this is in fact a valid issue with the Plaintiff as it is well documented by his outside physician who had been sent a release of information form from the BOP to receive copies and treatment history of the Plaintiff  (please see journal). When Mrs. Leen stepped inside the pharmacy he attempted to plead with Mrs. Weber to do something rather thanmake me wait until the weekend is over to receive the medical attention that was necessary. He made it clear that he couldn't swallow any food, water, or his medication that he takes twice a day. She only stated that, "Mrs. Leen is the H.S.A. and has made her decision. Mrs. Leen stepped back out of the pharmacy with a small cup containing less than an ounce of water. She stated that I needed to drink that, so he did. She said that she spoke to the Dr. (Grasley) and that the Plaintiff needed to drink water in very small amounts. Once he swallowed that small amount of water, Mrs. Leen stated, "see that went down and stayed down." She said we were done and that she would take care of it and started to walk away. The Plaintiff was left standing and wondering what if anything was going to take place. Mrs. Leen had walked in the direction of the Lt.'s office.

Approximately an hour later the Plaintiff walked up to the Lt.'s office with his cell-mate Travis Boley. He asked the compound officer Mr. Churchill who the Lt. was and if he could speak to him. He was told to sit on the bench. Lt. Landon came out approx. 25 minutes later and asked the Plaintiff what was going on. The Plaintiff explain in the best detail possible the events that have transpired. He simply said that there was nothing that he could do and that Mrs. Leen had already spoke to him about it and stated to him that, "he'd have to go to sick-call on Monday.

The Plaintiff began to think about his family and wanting to inform them of what was transpiring in case something terrible happened. The Plaintiff's mother bagan trying to call the institution to see why they were not treating

CONTINUATION OF FACTS FROM PAGE 5...

her son properly. She called several times with no response to the telephone. Becoming increasingly concerned for her sons well being, she contacted the local sheriffs department in Sheridan, Oregon. It was the phone call that the sheriffs made that ultimately pushed Mrs. Leen over the top.

The Plaintiff returned to the housing unit 2B, where he began trying to dislodge the piece of meat that was stuck. He was told by real and actual paramedics on the streets the last time this had happened to never try dislodging the meat by way of vomitting. It's very dangerous and could become a choking hazard. This was exactly what the PLaintiff began to do. Vomit repeatedly and forcing water back down to try to break the meat free. After doing this for approx. 30 minutes, the meat did dislodge and continued to go down the intestinal tract.

Upon freeing the meat he went to the unit officer, Mr. Sorkin and asked him to contact medical and ask Mrs. Eddings if he could come up to medical on the next move to take his meds now that he can swallow again. She said. "no, He should have taken them during pill-line.

On or about 04/29/2019 Plaintiff went to sick-call as directed by Mrs. Leen, he spoke to the EMT Mr. Anderson and he refered me back to her. At approx. 9:47 am Mrs Leen came to the waiting area to speak to him. She asked him to step behind the door. She informed me that she had spoke to the doctor and directed him to submit him for a consult to see a gastroenterologist. She then turn very nasty, rude, disrespectful, and highly unprofesional. She began stating, "if you ever pull that kind of crap again, by calling your family." I stopped her right there in total disbelief and asked her, "what crap are you talking about?" She stated that he had comitted phone abuse in violation of bop policy. He found himself becoming upset and finally stated back to her that she may as well take his phone now by contacting whoever she needs to so that He can't return to the unit and inform his family that she had just threatened him with retaliation of false incident reports, trip to the shu, and loss of phone privileges. He

CONTINUATION OF FACTS FROM PAGE 5...

began to leave medical when Mrs. Leen directed him to sit down in the chair. He followed directions, sat and waited. Mrs. Leen then made a phone call presumably to the Lts. office. Mrs. Leen then poked her head out of the office, noticed that the plaintiff was taking notes of the encounter and she stated:

"be sure to spell my name right. It's L.E.E.N."

The Plaintiff continued to write her words verbatum in his journal without antagonizing her further. She walked down the hall briefly and when she returned directed the Plaintiff to follow her. The Plaintiff was escorted to the Lts. office where Lt. Lairdon took the side of staff and cautioned me not to make any phone calls to the outside world. He could take the Plaintiff to the SHU and make sure he didn't get a phone call for at least 30 days. The Plaintiff also informed the Lt. That he was aware of the rights that he did still have and being in prison does not remove them.

Defendant Mrs. Leen has continuously acted with deliberate indiffence to the Plaintiffs serious medical needs. Which do violate the Plaintiffs 8th Amendment right to be free from cruel and unusual punishment.

The Plaintiff has been approved for a colonoscopy and endoscopy for over two months for his swallowing issue. He still has the problem and Mrs. Leen continues to put the Plaintiff off with excuses as to why he has not been able to be scheduled for the outside doctor visit.

## E.  REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

For the violations of the Plaintiffs protected and guaranteed constitutional rights, he
seeks 10,000,000.00 million dollars and for actual damages caused to his liver  as a result
of the continued denial of treatment, the Plaintiff seeks 20,000,000.00 million dollars.
For the suffering of and exposure to deathly situations and subjecting the Plaintiff to
extreme psycological and emotional distress of having to watch, care for another inmate
who the named medical staff (defendants) refused to take action in a timely or adequate
fasion. For having to assist this inmate in matters or issues that his unit team or the
administrative staff should have been doing for him. Namely to wit: A compassionate
release. The Plaintiff also seeks from defendant Ms. Leen, the HSA at Sheridan, an additional
10,000,000.00 million dollars for the psychological and emotional damage caused by the
threats of punitive action for his family trying to contact and make sure he was getting
proper medical care and treatment for. Ms. Leen is included in this complaint as this
complaint arises out of one continuous transaction that is still ongoing today as this
complaint is being completed. The Plaintiff has worked on this complaint over the course
of several months due to being required to program daily during the week and having limited
time to complete his complaint. As of 8/27/2019, the Plaintiff has been scheduled to be
seen by a gastroenterologist, but has yet to go out. (Please see journal entries for
more detailed encounters with Ms. Leen in particular). The Plaintiff would also like
20,000,000.00 miliion dollars in punitive damages.

Plaintiff does reserve his right to amend this complaint in either defendants or facts
to this complaint at any time.

AuGust 27, 2019
(Date)

_____
(Signature of Plaintiff)

U.S. POSTAGE PAID
SHERIDAN, Or
SHERIDAN, OR
AUG. 26, '19
AMOUNT
$0.00
R2305E12440608
98101
1081

FILED
LODGED
RECEIVED
MAIL
AUG 30 2019
AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

08757-081
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON IN SEATTLE
700 STEWART STREET, SUITE 2310
SEATTLE, WASHINGTON 98101
LEGAL MAIL!!!

<>08757-081<>
Robert Stanard
Pobox 5000
Sheridan, OR 97378
United States

LEGAL MAIL

