

FILED
LODGED
RECEIVED

MAIL

FEB 18 2020

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

Robert A. Stanard,
Plaintiff,

      v.

Dr. Maria Dy. et al.,
Defendants.

)
)
)
)
)
)
)
)
)

**Case No.C19-1400-RSM-MLP**

**Amended Civil Rights Complaint**

**Pursuant to Bivens.**

Comes now, the Plaintiff Robert A. Stanard, pro se and without the competant assistance of counsel to file this first amended complaint.

### ARGUMENT

The defendants named in this complaint have violated the Plaintiffs constitutional rights and acted with deliberate indifference to the Plaintiff as the Plaintiff sought a constitutionally protected right to being treated for a serious medical need while in the care and custody of the named Defendants. Outdated and inadequate medical records were used in also denying, delaying, or hindering the Plaintiffs access to a viable and successful treatment to a serious medical need. One in which was contracted during his previous incarceration in the FBOP.

Robert A. Stanard  #08757-081
_____
FULL NAME

_____
COMMITTED NAME (if different)

Federal Correctional Institution
_____
FULL ADDRESS INCLUDING NAME OF INSTITUTION
P.O. Box 5000
Sheridan, Oregon 97378
_____

_____
PRISON NUMBER (if applicable)

## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Robert Allen Stanard, Pro Se,<br><br>PLAINTIFF,<br><br>Dr. Maria Dy, MD., Dan Sproul, Warden, Mrs. McDermont H.S.A., K. Martinez PA, Mary Mitchell Western Regional Dir., et al.,<br>DEFENDANT(S). | CASE NUMBER<br>C19-1400-RSM-MLP<br>*To be supplied by the Clerk*<br><br>**AMENDED**<br>**CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☐ 42 U.S.C. § 1983<br>☒ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes   ☐ No

2. If your answer to "1." is yes, how many? _____ **One** _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.) **It is in this Court. It pertains to violations to my constitutional rights, namely 1st, 5th, and 14th. It is still in the early stages. The Defendants have sought for summary judgement and dismisal for allegedly not exhausting other forms of grievences before filing the Bivens. However, I had exhausted my administrative remedy process as required by the P.L.R.A..**

CV-66 (7/97)

a. Parties to this previous lawsuit:

Plaintiff    **Robert Allen Stanard**

Defendants    **Special Investigative Agent Nolan, et al.,**

b. Court    **Western District of Washington at Seattle**

c. Docket or case number    **C19-0017-JLR-MAT**

d. Name of judge to whom case was assigned    **Judge Robart**

e. Disposition (For example: Was the case dismissed?  If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?)    **Still Pending**

f. Issues raised: **Constitutional Violations  1st, 5th, and 14th**

g. Approximate date of filing lawsuit:    **Approximately February 2019**

h. Approximate date of disposition    **Unknown**

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes    ☐ No

   If your answer is no, explain why not _____

3. Is the grievance procedure completed? ☒ Yes    ☐ No

   If your answer is no, explain why not _____

4. Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff **Robert Allen Stanard**
(print plaintiff's name)

who presently resides at **FCI Sheridan P.O. Box 5000, Sheridan, Oregon 97378**,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

**FDC Sea-Tac Seattle, Washington**
(institution/city where violation occurred)

on (date or dates) <u>On or about March 2, 2018 and continues as this complaint is filed.</u>
(Claim I)                    (Claim II)                    (Claim III)

**NOTE:**   You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.   Defendant   <u>Mrs. McDermont</u>   is/was employed at   _____ resides or works at
(full name of first defendant)
<u>FDC SeaTac</u>
(full address of first defendant)
<u>Health Services Administrator</u>
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:
<u>She relied upon the Bureau policy to deny an adequate treatment that was available</u>

2.   Defendant   <u>Dan Sproul</u>   Is/was employed at   _____ resides or works at
(full name of first defendant)
<u>FDC SeaTac</u>
(full address of first defendant)
<u>Warden</u>
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:
<u>He relied upon the policy to deny treatment and that I was "pre-trial" even</u>
<u>though I had already been convicted.</u>

3.   Defendant   <u>Dr. Maria Dy, MD</u>   is/was employed at   _____ resides or works at
(full name of first defendant)
<u>FDC SeaTac</u>
(full address of first defendant)
<u>Doctor, MD</u>
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:
<u>She relied upon Bureau policy and set criteria to deny treatment when it</u>
<u>would have only taken twelve weeks to complete.</u>

6   Defendant   Unknown      is / was _____ resides or works at
      (full name of first defendant)

    320 First Street, NW, Washington, D.C. 20534
    (full address of first defendant)

    Medical Director of the FBOP
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

As a medical professional he/she knew the dangers and damages caused by the disease
of Hep c. He/She relied upon the Policy of BOP to refuse treatment.

7   Defendant   Unknown     Is /Was _____ resides or works at

    (full name of first defendant)

    7338 Shoreline Drive, Stockton, California 95219
    (full address of first defendant)

    Is/ was Regional Medical Director
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
He/She relied on the Clinical Practice Guidelines to deny a viable treatment

to a patient in which was under his/her care who suffered from a life altering disease

8) Defendant   J. Baltazar      IS/WAS _____ resides or works at
    (full name of first defendant)

    Western Regional Office, 7338 Shoreline Dr., Stockton Ca. 95219
    (full address of first defendant)

    Western Regional Director   (in place of Mary Mitchell)
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

He relied upon a flawed policy to back up institutional staff in denying

the Plaintiff proper medical treatment. He also used old, outdated medical records
as facts to deny remedy in the administrative remedy process.

4   Defendant   Ian Conners      Is/was _____   resides or works at
(full name of first defendant)

320 First Street, NW, Washington, D.C. 20534
(full address of first defendant)

Administrator NAtional Inmate Appeals
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

He relied upon staff's reports, medical criteria that was outdated, medical records
that were severly outdated, and relied upon Medical Directors description of the Clinica
Practice Guidelines to refuse a viable treatment

## CLAIM I

My constitutional right under the equal protection clause of the 5th amendment was violated. There is no rationale relation between the dissimilar treatment of myself as a pre-trial inmate and any legitimate penalogical interest that is served by denying me Hep. C. treatment and granting it to inmates that are actually sentenced. Therefore this violates equal protections of the 5th amendment.

## CLAIM II

Under the 5th amendment of the due process clause, my rights as a pre-trial inmate as to my medical needs were violated in contravention of the Supreme Court ruling in City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

## CLAIM III

My 8th Amendment right was violated as the Defendants were deliberately indifferent to my serious medical needs.

FEDERAL CORRECTIONAL INSTITUTION
ROBERT STANARD #08757-081
PO. Box 5000
SHERIDAN, OR. 97378

LEGAL MAIL

Portland P&DC 97218
FRI 14 FEB 2020 PM

08757-081
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF SEATTLE
700 STEWART ST, SUITE 2330
SEATTLE, WA. 98121






U.S. PO
FCM LG
SHERD.
97378
FEB 14,
AMOUNt
$0
R2305E1

Supporting Facts , Exactly What Each Defendant did to Violate My Rights:

Defendants:

(1) Dr. Dy, MD; This is the explicit act that supports my 8th amendment claim as well as my 5th Amendment claim related to Deliberate Indifference by Dr. Dy;  When I was act FDC-SeaTac, I spoke to Dr. Dy at least 7 times regarding my serious and chronic disease. During at least, that I recall, on three occassions she informed me, after initially asking me if I wanted to receive treatment for my Hep C., she told me that I would not be able to since I was a pre-trial inmate, that I would have to wait to be sentenced and designated to a different facility. Dr. Dy at least on one occassion, when I asked her why this was (referring to the denial of hep. c. treatment), She stated that, "it is BOP pollicy."

(2) Mrs. McDermont, This is the explicit act(s) that support my 8th amendment claim as well as my 5th amendment claim related to Deliberate Indifference by Mrs. McDermont: I had spoke to her on at least three different occassions as she made her rounds in the Unit. On at least one of these occassions she had made it clear to me, by saying, "you will not be able to get any treatment while you are here because (1) you are a pre-trial inmate, and (2) your APRI Levels are not within the required range to receive treatment."

(3) Dan Sproul (Warden), This is the explicit act(s) that support my 8th Amendment claim as well as my 5th amendment claim related to Deliberate Indifference by Mr. Dan Sproul: I spoke to Mr. Sproul on at least (4) four occassions as he would enter the unit for mainline (lunch), during which time of at least one occassion he told me that "they (BOP) are not required to give treatment to any pre-trial inmate, but that he would speak with medical to confirm." Mr. Sproul also continued to delay, hinder, or deny my access to a treatment that could better my health and quality of life when he responded to my administrative remedy (BP-9) seeking proper treatment.

He also relied upon BOP policy to support a finding of denying treatment.
This policy or criteria is located in the "Interim Guidance for the
Management of Chronic Hepatitis C Infection, Federal Bureau of Prisons
Clinical Practice Guidelines, dated June 2014.

(4) J. Baltazar (Western Region Director), or current predessor; This is the
explicit act(s) that support my 8th Amendment claim as well as my 5th Amendment
claim related to Deliberate Indifference by  Mr. Baltazar; I filed an appeal
to the Wardens response to my administrative remedy (BP-9) in which Mr.
Baltazar happened to review. In his response to the appeal (BP-10), he goes
to great lengths to explain the Program Statement 6031.04, Patient Care,
which describes five (5) types of care provided to inmates. He goes on
further to state that, "ordinarily, pre-trial or non-sentenced inmates, and
inmates with less than 12 months to serve, are INeligible for health services
in subsections c., d., and e. Therefore, an inmate, regardless of status, is
provided medically necessary treatment in accordance with policy."  Mr.
Baltazar relied soley upon policy in denying me an adequate treatment to a
serious medical need.

(5) Ian Conners (Administrator National Inmate Appeals), or current predessessor:
This is the explicit act(s) that support my 8th Amendment claim as well as
my 5th Amendment claim related to Deliberate Indifference by Mr. Conners;
Mr. Conners was involved with the appeal process appealing the Regional
Directors response to my BP-10. Ian Conners reviewed and responded to my
BP-11 in the Central Office of the FBOP (D.C. Office). Mr. Conners in up-
holding the denial of treatment relied upon inadequate and outdated medical
records from my previous incarceration in which I was released from BOP
custody in Aug. 2010. Here it is nearly 8 years later and surely relying
on such old of records could be neglegance on on his part. No new tests
were ever conducted or ordered. He further claims that I do not have any

"no tissue damage." that I showed, in July 22, 2009, stage 0 fibrosis. Furthermore, Mr. Conners states "you are not at high risk for progression of liver disease and that I do not meet the (BOP ) treatment criteria. Mr. Conners relied on outdated, inadequate medical records that caused him to make a finding to continue the denial, delay, and hinderance of getting me treatment. He also relied upon Official BOP Policy and Program Statements in his denial of my appeal. He supported at every level and what every staff had previously relied upon such as the Warden Sproul, HSA McDermont, Dr. Dy, Region Appeal, J. Baltazar, Regional Medical Director, and Unknown Medical Director.

(6) Unknown Medical Director, This is explicit act(s) that support my 8th Amendment claim as well as my 5th Amendment claim related to Deliberate Indifference by Unknown, Medical Director: This defendant relied upon the outdated medical records to back up his medical staff in denying, delaying, or hindering me getting the proper, timely, and adequate medical treatment. He also relied upon the "Interim Guidance for the Management of Chronic Hepatitis C Infection, Federal Bureau of Prisons Clinical Practice Guidelines; June 2014. The unknown Medical Director for the Bureau of Prisons, Office would have reviewed the medical records and administrative Remedies already submitted by myself to the warden and the regional Director. He/She then would have based their decision to deny me Hep. C. treatment based upon such.

(7) Unknown Western Regional Medical Director, This isexplicit act(s) that support my 8th Amendment claim as well as my 5th Amendment claim related to Deliberate Indifference by Unknown, Regional Medical Director: This defendant had the authority to authorize adequate medical treatment and care. This defendant to denied me treatment and relied on the very same policy and Program Statement that the other Defendants have. After review of the medical Records and administrative remedies they recomended to the Regional Director to deny me Hep. C. treatment.

For other pertanant facts related to this Bivens action please see the following facts below:

On or about March 2, 2018, I requested a BP-8 (informal resolution form) From counselor Erickson. Upon receiving such form, I completed it, handed it back to counselor Erickson. In my first BP-8 I stated that I would like to be treated for the Hep C. that I had been diagnosed with. I waited a reasonable amount of time for a response. After about two weeks I began to inquire to Mr. Erickson about 2 to 3 times a week for my response. His reply was always the same, "Just waiting for medical to respond to my email." When April came around, I asked Counselor Erickson for a response, good or bad so that I could advance my complaint and the violations to my constitutional rights in particular my 8th amendment right to be free from Cruel and Unusual Punishment. Counselor Erickson gave me a new BP-8 and directed me to fill it out, in which I did so immediately. The date on that one was April 4, 2018. The response finally came for this second BP-8 on May 13,2018, again untimely. I had at one point before receiving a response to second BP-8, attempted to submit a formal BP-9 to the Warden without the BP-8

CONTINUATION OF FACTS FROM PAGE 5...

That BP-9 was rejected by the wardens office for not having the BP-8 attached to it. The same day that the rejected BP-9 was returned, my second BP-8 was also returned on this date, May 13, 2018. I resubmitted my BP-9 along with the BP-8 on May 13, 2018. The BP-9 was received by the administrative remedy coordinator on May 18, 2018. Attached to my BP-9 was a copy of my electronic request to staff (cop-out) to Dr. Dye, information that I had found regarding Hep. C, treatments, and cases where federal judges were getting involved and requiring state prison officials to give treatment to prisoners that were infected with Hep. C. I received a response to my BP-9 on or about May 24, 2018, dated May 22, 2018.

The response dated May 22, 2018 from the Warden Dan Sproul stated:

> "an investigation into this matter reveals that
> according to your Health Services Records, you
> are currently a treatment priority level 3 and
> a pre-trial inmate. The Federal Bureau of Prisons
> is currently focusing on treating priority level
> one and two level inmates. You will continue to
> be monitored closely by Health Services Staff.

During my grievance process and while I was attempting to exhaust this process as required by the P.L.R.A., I watched another inmate rapidly deteriorate from the very same disease. I had a chance to get to know this inmate by his name as Michael Doughty. I got to know him over the course of roughly 4 to 5 months. His registration number was #75259-083. I witnessed this man in the span of roughly three months wither away to about 80 pounds. You could literally see bones sticking through his skin. It reminded me of a saying I once heard, "talk about a skeleton clothed with skin. Myself and other inmates spoke on Mr. Doughty's behalf several times with Unit Officers or Medical Staff to do some-thing for him. Some of the things we did were bring medical to his cell cause he was retaining so much fluid that he couldn't get up out of bed, told medical of the pain he was in, serviced him like he was in a hospice center of some sort.

CONTINUATION OF FACTS FROM PAGE 5...

I believe that his release date was in the first week of June 2018. He could barely get up to eat a meal. We, the inmates started to taske the food to him. We also told medical about his difficulty with eatting to where they finally gave him Ensure Protien drinks. There was even a time that Mr. Doughty was in such serious pain that he went to the officer and told him that he was in serious pain. The officer told him to stop faking and return to his cell. Upon hearing this, another inmate and myself approached the officer and demanded that he either contact medical for this inmate or we wanted to see the LT. We were near certain that Mr. Doughty was not faking his pain. He was visibly swelling in the abdominal area. He then fell onto the ground in agonising pain. It was then that the officer called a medical emergency over his radio. We would bring him water to drink, assist him in using the restroom. We spoke to the unit team about assisting in getting him a compassionate release. His only family that he talked about was a 90 year old mother. A short time later he began to get so bad that they had removed him from our unit and to the hospital. He never returned to out unit. We were told that while at the hospital he was put on comfort care and passed away just a few days later. He was just days away from his release date when he passed away to my understanding.

This had really caused psychological issues with me due to just watching someone die and unable to do anything for him. I spoke to Dr James (clinical pyschologist). I was distraught and I remember thinking that a Federal Agency is charged to keep it's inmates safe and alive, just let this guy die. in what seemed like an inhumane manner.

I did appeal the Wardens decision of denial to the Western Regional Director within the (20) twenty days from the date of the response on the BP-9. My appealto the Western Regional Director's office dated 05/30/18 was received by the director's office on June 1, 2018.

CONTINUATION OF FACTS FROM PAGE 5...

I reiterated that I wanted the Hep. C treatment. I countered the Wardens response that I was a pre-trial inmate. By stating the truth. That truth was that I was no longer a pre-trial inmate but had been convicted at trial and past "pre-trial" status. I explained that I was at the minimum a hold over inmate in hold over status.

I made very clear the problems or issues that I deal with on a regular basis. I suffere from fatigue, Bloating in the abdominal area or swelling of my liver. Often times painful, and always needing to nap from the fatigue. I had started my appeal with the names of medical staff that I've spoken to in regards to my concerns, Dr. Dye, Mrs. K. Martinez, Warden Dan Sproul, the regional medical director. Their failure or the full fledge of medical indifference continues with their refusal treat and deny my access to a confirmed viable treatment for my infectious disease. A disease that detected during my previous incarceration with the Federal Bureau of Prisons.

I did not receive a response to my BP-10 until December 6, 2018 after I submitted my BP-11 to the Central Office which was dated October 7, 2018, received in the Central Office on October 19, 2018, Administrator National Inmate Appeals, Ian Conners. I received the response and denial dated November 13, 2018, received in the Wardens Office, November 19, 2018. I received on November 22, 2018 From Counselor Cray (FCI Sheridan). These dates are significant for the purpose of showing how the Federal Bureau of Prison's handles and interfers with the administrative remedy process that is required in order to seek relief.

Furthermore, during the month of August 2018, FBOP changed it's policy and criteria for treating inmates with the Hep. C. disease. They removed the actual biased criteria and "mandated" that everyone is to get the treatment that wants it. This was taken from the response of another inmates remedy response

CONTINUATION OF FACTS FROM PAGE 5...

to their BP-11 that he received on February 10, 2019. Inmate John Etzel #76892-065 still has not been given treatment  (Please see attached BP-11).

In my BP-11, I layed out for the Central Office (D.C.) and for my documentation that under title 42 U.S.C.S. § 1983, to prevail on a claim of deliberate indifference, I only Three (3) elements to prove in order to suceed on my claim.

In the response by Ian Conners, he relied on old, outdated medical records to determine that in July 22, 2009 from a liver biopsy that I showed a stage zero (0) fibrosis (no tissue/liver damage). I have asked multiple times to see a specialist, imaging, or another biopsy to be preformed to determine the correct diagnosis, and a more accurate one. Every real medical profesional knows that the disease of Hep. C is a progressive one. Meaning that findings over ten (10) year prior would be inconclusive to the ones taken prior.

I sent many request to staff (cop-out) regarding trying to obtain proper and adequate medical treatment for my Hep. C. I'd spoke to Dr. Dye, K. Martinez, and even the Health Services Administrator Mrs. McDermont.

When I spoke to Mrs. McDermont her short reply was that I didn't meet the "criteria" set forth by the FBOP Clinical Practices Guidelines. Many times I would never receive a response via the electronic Request, I found myself talking to K. Martinez regarding my Hep. C. and treatment. I spoke to K. Martinez in person on May 29, 2018 in Unit EC. She informed me that my APRI does not meet the criteria of the FBOP. That I would continue being monitored regularly. Being regularly monitored only means blood drawn every six months. Nothing more.

In November 2017 my APRI was at a .6, January 2018 a .1 with a viral load of 2,600,000. This clearly confirms that the APRI can and does fluxuate.

CONTINUATION OF FACTS FROM PAGE 5...

Thus, when it is elevated, it tends to do more damage to the liver than when at a .1.

I went to sick call on or about July 6, 2018, I spoke to P.A. D. Smith in regards to having a tough time swallowing. He refered me to an outside ENT Doctor. That request was approved by the Western Regional Medical Director. I went to the pre-op on or about September 4, 2018. At the pre-op it was explained to me what to expect during the procedure. Upon completion of the pre-op appointment, an appointment had been scheduled. However, before I could actually go to have the procedure done, I was transfered to FCI Sheridan.

It is here that I concluded that the FBOP will avert their responsabilities and duties to inmates health and well being. It was here that I started fresh with documenting my interactions with medical staff or the Health Services Administrator.

On or about September 25, 2018, during the receiving process of arriving to this institution, that I spoke to and met Mrs. Leen, the Health Services Administrator for FCI Sheridan. I explained all of my concerns that I'd been dealing with up at SeaTac. From the Hep. C. treatment, seeing the ENT Specialist for the dificulty swallowing. She had stated that policy has changed regarding the treatment of inmates with Hep. C.. That she has only been here at the institution for about two weeks and to please give her some time to get things implemented. (Think forward to the response given from Ian Conners just months later, stating that I don't meet the criteria).

Once, I was settled in the housing unit I'd been assigned to, I sent the Dr., Dr. Cantu a message on or about October 3, 2018 via the Electronic request to staff. I explained I was a new arrival and was seeking to see him or speak to him as soon as possible. I never received a response. I found out approx. ten (10) days later that Dr. Cantu was being replaced by a Dr. Grassely.

CONTINUATION OF FACTS FROM PAGE 5...

Upon learning this information I sent a cop-out on October 13, 2018 to Dr. Grassely with my three (3) medical concerns. I never received a response from Dr. Grassely via the electronic cop-out system. However, on November 14, 2018, I was listed on the call-out sheet for an appointment to see Dr. Grassely. (see copy of Journal sheet). I started of with explaining that I'd been in the process of exhausting my administrative remedy procees to get the Hep. C. treatment. At this appointment I told him that I'd like to see an ENT Specialist for the problem of swallowing that I've been having. I started to explain that my constitutional rights 6th, 8th, 10th, and 14th were being violated by the blatant refusal of the FBOP to begin treating me. He told me that I need not quote the constitution to him, that I could get the treatment if I wanted it. He did inform me that it wouldn't be immediately, but only a wait of about 60 days. He did state that I wasn't getting the treatment at SeaTac because I was a pre-trial inmate.

On or about November 10, 2018 I went to a Lab call-out (blood work) The first step to potentiall being treated, so I'd thought. On or about November 29, 2018 I managed to catcha glance at the computer screen in medical and could see that the APRI of my latest results which showed an extra elevated Level to a .27, which just six (6) months prior was only a .07. On January 29, 2019, I returned to sick-call again to find out if or when I would potentially be going to see an ENT. I also asked about my Hep. C. treatment and if there was any idea when I might get started on treatment. The staff member who I was speaking to (Mr. Bergman) said he did not know anything about it but would and did send an email to Dr. Grassely.

Even though from the begining of my grievence process, I was being denied a treatment that only would take 12 weeks, at that time, to irradicate the disease

CONTINUATION OF FACTS FROM PAGE 5...

for (1) being a pretrial inmate, (2) not meeting the FBOP APRI criteria, (3) A liver biopsy from July 22, 2009 (outdated Medical records) in which I was released from the Federal Bureau of Prisons custody in August  2010, reintegrated back into society for over five (5) years before returning to Bureau custody.

The policy that changed in August 2018 to include every inmate who wants treatment can get it, has been slow to implement. I have been here at Federal Correctional Institution, Sheridan since the last week of September of 2018. As of the last week of May 2019, I'd completed the eight (8) week treatment called Mavyret (Glecaprevir 40 mg tab). At just over half way through the treatment, I was tested. Those results showed that the disease had no longer been detected. This was at just 5 1/2 weeks into the treatment. Plenty of time to receive the treatment while still at SeaTac in all the months they spend finding or relying on policy to deny me the treatment.

It has been proven that Hep. C. is a silent killer. That the denial for over or lack thereof treatment for the period that I suffered going without being treated could have been used to treat me over six (6) times. At every level of the grievence process from institution to Central Office, I've been denied and each staff member who has participated in this process has been made aware of my life changing disease that left untreated causes unseen tissue damage, damage to organs such as liver, kidneys and even the esophagus. Damage occures on a daily basis when left untreated. The Bureau of Prison's deliberate and wanton affliction of pain and suffering has to be corrected. Pain caused from liver inflamation, causing me days of pain, bloating, and unable to eat from my liver pushing on my stomach, as well as causing esophageal varices, which can cause difficulty swallowing. I've asked on mulitple occassions to be seen by a specialist such as  hepatologist, gastroenterologist, or Interventional radiologist. I Still have not seen any of them. It is still unknown to date to what extent

CONTINUATION OF FACTS FROM PAGE 5...

the damage I have truely suffered, especially since Mr. Ian Conners himself admits by
using a outdated medical record of a liver biopsy preformed in 2009.

It is due to my constant nagging and pushing or utilizing the administrative
remedy process that I did finally get treatment. The Bureau medical staff and
administrative staff had been deliberately denying any form of treatment to better my
way of life or health.

To establish the criteria that I, the Plaintiff must demonstrate (1) I have
a serious medical need. It is pretty simple to prove this element just by the series
of blood tests to confirm that I have/had a serious disease, (2) The Staff was deliberately
indifferent to that need. The Bureau and staff followed and relied upon the policy when
denying me a valid treatment, (3) The indifference caused harm. It has already been
proven that everyday that Hep. C. is left untreated, it causes irepairable and ireversible
damage. Following this policy was the moving force behind the staff being able to deny my
access to treatment and violate my rights to that treatment. Medical staff and admin.
staff failed to respond to the medical need. The last element to deliberate indifference,
is the seriousness of the prisoner's medical need. Leaving Hep. C. untreated is certainly
a serious need.

The Plaintiff does believe he has showed and met all the criterias for this court
to allow this complaint to move forward and even beyond a summary judgement when filed
by the defendants. The Plaintiff has exhausted the only avenue known and required by the
P.L.R.A. As futile as it was for the Plaintiff to even continue with the administrative
remedy process because of the Bureaus reliance on policy to deny proper and adequate
medical treatment, he continued, showing his diligence in seeking remedy.

The Plaintiff has asked to be seen by a gastroenterologist for a developing
issue with swallowing. On or about 05/24/18, Plaintiff sent an electronic request to
staff (Dr. Dy) seeking to be seen by a gastroenterologist, hepatologist, infectious
disease specialist, or transplant specialist regarding his Hep. C and receiving a viable

CONTINUATION OF FACTS FROM PAGE 5...

treatment. Plaintiff received a response by unknown staff on or about 05/27/18, only stating "wait for appointment." That appointment took place on or about 05/29/18 with Defendant K. Martinez. I again spoke to Defendant K. Martinez on or about 06/01/18. During this encounter she was "educating" me about the APRI and that I still did not meet the FBOP criteria due to my APRI level again going back down. Defendant Martinez also informed me that I will not win my battle of receiving treatment of my Hep. C. before I am designated and sent to my new facility. Defendant was clearly acting in a indifferent manner and knowingly violating right and access to proper medical treatment.

On or about 07/06/18 the Plaintiff submitted an additional request to Defendant Dr. Dy requesting to be seen and that I was having difficulties with swallowing, "regular sized bites. Sometimes feeling like it gets stuck." P.A. D. Smith had submitted the Plaintiff to be sen by the outside ENT. That request was approved by the regional medical director  on or about 08/01/18. Plaintiff did go to a consult on or about 09/04/18. No procedure was done. When completed with the consult there had been an appointment scheduled to preform the procedure. Plaintiff was transfered out of FDC Seatac on or about 09/15/18 before the procedure could be preformed.

On or about 10/03/18, Plaintiff arrived at Federal Correctional Institution at Sheridan where he submitted an electronic request to a Dr. Cantu (who was no longer the attending physician) seeking treatment for my Hep. C., to see the infectious disease coordinator, a gastroenterologist for the difficulties with swallowing. He also explained that he was sheduled to be seen for a procedure before He was transfered. He never received a response from that request.

Upon arriving at the FCI, Sheridan, the Plaintiff began documenting each encounter with staff pertaining to any medical issues. This was done at the urging of another inmate named Lonnie Lillard # 27612-086 (please see attached declaration).

CONTINUATION OF FACTS FROM PAGE 5...

On or about 11/14/18, Plaintiff was listed on the call-out to see the Dr. @ 9a.m.

Plaintiff met Dr. Grasley where upon they discussed several issues that the

Plaintiff is concerned about. Issues ranged from Hep. c. treatment, gastroenterologist,

eye dr., and mentioned pain in his shoulder. The Plaintiff had stated to Dr. Grasley

the following:

> "I've been battling the FBOP now almost a year to get treatment
> for this Hep. C. To continue denying me is a violation of several
> constitutional rights. I'm nearing the end of my grienance process
> and will begin a lawsuit, as many Federal courts, and Judges are
> now getting involved with the prison systems denying adequate and
> proper medical care."

Doctor Grasley simply replied:

> "You don't have to recite the constitution to me. If you want the
> treatment I'll put you in for it. You haven't been able to get it
> because you were a pre-trial inmate. We are getting treatment ready
> for several people so it'll be a short wait, but you'll get it."

On or about 11/29/18, Plaintiff went to sick-call @ 9:30am after morning

fog count. He spoke to Mr. Bergman regarding the renewal of his prescriptions

that the Dr. had ordered for 180 days on 11/14/18, yet the pharmacy said had expired.

Mr. Bergman was very professional as was informative. He sent an email to the Dr.

regarding his concerns. However, the Plaiontiff was able to catch a peek at the

computer screen and could see that his latest blood work revealed and APRI of approx.

.27. Well enough inthe FBOP Criteria that was no longer as of sometime in August 2018,

(please see Administrative Remedy response by Ian Conners on inmate John Etzel

# 76892-065). In this response  dated, 02/04/19, it states:

> "The BOP expanded access to HCV treatment to all sentenced
> inmates in August 2018; however, institutions may continue to
> use the priority level system to prioritize their patients."

The Plaintiff has a response by Ian Conners dated 11/13/18, after this

policy change regarding the treatment of HCV, where Defendant Conners does

inform the Plaintiff that the policy has changed and relied on Plaintiffs prior

incarcerationed medical records as a means to deny the Plaintiff treatment.

CONTINUATION OF FACTS FROM PAGE 5...

This denial of treatment based on a mere liver biopsy performed in 2009 or an old ultrasound report from the same time is clearly an act of neglagence and deliberate indifference to my medical needs.

### E.  REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

For the violations of the Plaintiffs protected and guaranteed constitutional rights, he seeks 10,000,000.00 million dollars and for actual damages caused to his liver  as a result of the continued denial of treatment, the Plaintiff seeks 20,000,000.00 million dollars. For the suffering of and exposure to deathly situations and subjecting the Plaintiff to extreme psycological and emotional distress of having to watch, care for another inmate who the named medical staff (defendants) refused to take action in a timely or adequate fasion. For having to assist this inmate in matters or issues that his unit team or the administrative staff should have been doing for him. Namely to wit: A compassionate release. The Plaintiff also seeks from defendant Ms. Leen, the HSA at Sheridan, an additiona 10,000,000.00 million dollars for the psychological and emotional damage caused by the threats of punitive action for his family trying to contact and make sure he was getting proper medical care and treatment for. Ms. Leen is included in this complaint as this complaint arises out of one continuous transaction that is still ongoing today as this complaint is being completed. The Plaintiff has worked on this complaint over the course of several months due to being required to program daily during the week and having limited time to complete his complaint. As of 8/27/2019, the Plaintiff has been scheduled to be seen by a gastroenterologist, but has yet to go out. (Please see journal entries for more detailed encounters with Ms. Leen in particular). The Plaintiff would also like 20,000,000.00 miliion dollars in punitive damages.

Plaintiff does reserve his right to amend this complaint in either defendants or facts to this complaint at any time.

2/12/20
_(Date)_

_(Signature of Plaintiff)_

## CERTIFICATE OF SERVICE

    I hereby certify that on **February** 12, 2020 caused this Motion to be mailed to the Court and one copy to be mailed to the United States Attorney on this case, which is considered filed/served at the moment it was delivered to prison authorities for mailing as provided for in Houston v. Lack, 487 U.S. 266, 101 L. Ed. 2d. 245 (1988), by placing a complete copy of this Motion in a sealed envelope, affixed with the appropriate postage, and deposited with prison officials at the Federal Detention Center in Seattle, Washington.

    Pursuant to 28 U.S.C. §1746, I declare under penalty of purjury that the foregoing is true and correct to the best of my knowledge.

Robert A. Stanard
Plaintiff
Defendant
Reg # 08757-081