UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT A. STANARD,

                              Plaintiff,

        v.

DR. MARIA DY, *et al.*,

                              Defendants.

CASE NO. C19-1400-RSM-MLP

REPORT AND RECOMMENDATION

## I.        INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff Robert Stanard is currently in the custody of the Federal Bureau of Prisons ("BOP") and is confined at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). However, the claims asserted in this action arose out of Plaintiff's confinement at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac") in 2018 prior to his transfer to FCI Sheridan. (*See* Dkt. # 14.) Plaintiff complains that he was denied treatment for Hepatitis C while confined at FDC SeaTac based on BOP policy, and he alleges that denial of this necessary medical treatment violated his rights under the Fifth and Eighth Amendments. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff identifies the following Defendants in his amended complaint: Dr. Maria Dy, medical doctor at FDC SeaTac; Mrs. McDermont, Health Services Administrator at FDC SeaTac; Dan Sproul, Warden at FDC SeaTac; J. Baltazar, Western Regional Director; and, Ian Conners, Administrator of National Inmate Appeals. (*Id*. at 4-6, 9-11.) Plaintiff seeks damages in the amount of $30 million from these five Defendants. (*Id*. at 24.)

Defendants Dy, Sproul, Baltazar and Conners have filed a motion to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (Dkt. # 30.) Plaintiff has filed a response in opposition to Defendants' motion, and Defendants have filed a reply brief in support of their motion. (Dkt. ## 32, 34.) The Court, having reviewed Defendants' motion, Plaintiff's response thereto, and Defendants' reply, concludes that Defendants' motion to dismiss should be granted, and that Plaintiff's amended complaint and this action should be dismissed with prejudice.

## II.    BACKGROUND

Plaintiff entered FDC SeaTac on November 10, 2016 after charges were filed against him in this Court for being a felon in possession of a firearm. (*See* Dkt. # 32 at 4; *see also United States v. Stanard*, CR16-320-RSM, Dkt. # 4.) Plaintiff was remanded to custody following an initial appearance on the charge, and he was subsequently ordered detained pending trial. (CR16-320-RSM, Dkt. ## 3, 8.) Plaintiff proceeded to trial in January 2018 and, on January 11, 2018, he was convicted following a four-day jury trial on all four counts charged in a superseding

---

[1] Defendant Louise McDermont was referenced by Defendants' counsel in an earlier submission, a motion requesting extension of the deadline to file a responsive pleading, and there was at least a suggestion that she could be included with the other Defendants in being represented by the United States Attorney's Office. (*See* Dkt. # 19.) However, Defendants' counsel has not appeared on behalf of Ms. McDermont and it is unclear at this juncture whether this Defendant has been served as she has not returned a waiver of service of summons nor have the service materials directed to her at FDC SeaTac been returned as undeliverable. Defendants' counsel offers no explanation for the omission of Ms. McDermont from his subsequent submissions. It appears, however, for the reasons set forth below, that dismissal of this action is appropriate as to all Defendants including Ms. McDermont.

REPORT AND RECOMMENDATION
PAGE - 2

1    indictment. (*See Id.*, Dkt. ## 101-118.) Plaintiff was sentenced on July 13, 2018 to 84 months

2    confinement, and he remained in detention at FDC SeaTac until late September 2018 when he

3    was transferred to FCI Sheridan. (*Id.*, Dkt. ## 154-155; *see also* Dkt. # 6-2 at 12; Dkt. # 14 at

4    19.)

5         When Plaintiff arrived at FDC SeaTac in November 2016, he had a pre-existing Hepatitis

6    C diagnosis dating back to at least 2009 when he was previously in BOP custody. (*See* Dkt. # 6-2

7    at 12; Dkt. # 14 at 15.) According to Plaintiff, he discussed his Hepatitis C diagnosis and

8    possible treatment with Dr. Dy when he first arrived at FDC SeaTac, but he refused all forms of

9    medical and professional help at that time. (Dkt. # 32 at 5.) In early 2018, following his

10   conviction, Plaintiff began requesting treatment for his Hepatitis C from staff at FDC SeaTac

11   including Dr. Dy, Ms. McDermont, and Warden Sproul. (Dkt. # 14 at 9, 16; Dkt. # 32 at 5.)

12   Plaintiff's requests were uniformly rejected based on the fact that he was deemed a pretrial

13   detainee and that his APRI[2] score was not within the range required to receive priority for

14   treatment under then existing BOP policy. (Dkt. # 14 at 9, 16.)

15        Plaintiff thereafter pursued his requests for treatment through the BOP's administrative

16   remedy process. On March 2, 2018, Plaintiff submitted a BP-8, informal resolution form, to his

17   counselor indicating he wanted to receive treatment for Hepatitis C. (*Id.* at 12.) Plaintiff

18   apparently never received a response to this initial request and he therefore submitted a second

19   BP-8 in early April 2018 asking that he be provided immediate treatment for his Hepatitis C.

20   (*Id.*; Dkt. # 6-2 at 2.) Plaintiff received a response to his second request on May 13, 2018

21

22   [2] The APRI (AST-Platelet Ration Index) is a non-invasive method used by the BOP to assess liver
     fibrosis and cirrhosis. (*See* Dkt. # 31, Ex. A (BOP's January 2018 Evaluation and Management of
23   Chronic Hepatitis C Virus (HCV) Infection) at 10, 12-13.) The APRI score is a calculation based on the
     results from two blood tests and it is one of the criteria used to determine an individual's priority to
     receive treatment for HCV treatment. (*Id.*, Ex. A at 10, 12-13.)

REPORT AND RECOMMENDATION
PAGE - 3

1    advising that his request was denied for the following reasons: "You are a treatment Priority

2    Level 3 and a pre-trial inmate, the Bureau of Prisons is currently focusing on treating designated

3    Priority 1 & 2 Level inmates." (Dkt. # 6-2 at 2.) Plaintiff was further advised that he would

4    continue to be monitored. (*Id.*) This response was consistent with then current BOP clinical

5    guidance regarding treatment of inmates with Hepatitis C. (*See* Dkt. # 31, Ex. A.)

6        Plaintiff next submitted a BP-9, formal request for administrative remedy, to the warden

7    of FDC SeaTac, Warden Sproul. (Dkt. # 6-2 at 3-6.) Warden Sproul denied Plaintiff's BP-9 on

8    May 22, 2018, once again citing Plaintiff's status as a treatment priority level three and a pretrial

9    inmate. (*Id.* at 7.) Plaintiff was advised again that the BOP was focusing on treating priority level

10    one and two inmates, and that he would continue to be monitored by the medical staff. (*Id.*)

11        On May 30, 2018, Plaintiff submitted a timely appeal of the warden's decision, a BP-10,

12    to the Western Regional Director. (*Id.* at 10-11.) Plaintiff argued therein that his "status" should

13    not matter and that, in any event, he was no longer a "pre-trial" inmate as he had been convicted

14    at trial. (*Id.* at 10.) Plaintiff claimed in his appeal that the disease impeded his ability to enjoy

15    and participate in daily activities because of fatigue, abdominal bloating, and "varying degrees of

16    pain," but indicated that such symptoms typically did not last long enough for him to be seen at

17    sick call. (*Id.*)

18        Plaintiff did not receive a timely response to his BP-10 and, on October 7, 2018, he

19    submitted an appeal to the central office, a BP-11, without having received a response from the

20    Western Regional Director. (*Id.* at 17-18.) Plaintiff had by that time been transferred to FCI

21    Sheridan. Plaintiff received a response to his central office appeal from the Administrator of

22    National Inmate Appeals, Ian Conners, on November 13, 2018. (*Id.* at 19-20.) Plaintiff received a

23    response to his BP-10 appeal from the Regional Director, Juan Baltazar, on December 6, 2018,

REPORT AND RECOMMENDATION
PAGE - 4

over six months after the appeal had been filed. (*Id*. at 12-13.) Defendants Conners and Baltazar both determined that Plaintiff had received appropriate care consistent with BOP clinical guidelines. (*Id*. at 12-13, 19-20.) Prior to Plaintiff receiving responses to his appeals from Defendants Conners and Baltazar, the BOP updated its clinical guidance for treatment of Hepatitis C to allow for treatment to all inmates, not just sentenced inmates. (*See id*. at 19; *see also* Dkt. # 31, Ex. B (BOP's August 2018 Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection).)

After Plaintiff was transferred to FCI Sheridan, he indicated to the medical staff there his desire to receive treatment for his Hepatitis C. (Dkt. # 14 at 17-18.) New laboratory tests were ordered and Plaintiff was placed on a list for follow-up evaluation for treatment. (*See* Dkt. # 6-2 at 12.) Plaintiff was subsequently authorized to receive treatment and he successfully completed an eight-week course of treatment in May 2019. (Dkt. # 14 at 19.)

Plaintiff alleges in his amended complaint that Defendants violated his Fifth Amendment right to equal protection when they denied him treatment for Hepatitis C based on his status as a pretrial inmate while affording such treatment to inmates who had already been sentenced. (*Id*. at 7.) He further alleges that Defendants violated his Fifth Amendment right to due process when they failed to properly address his medical needs as a pre-trial inmate. (*Id*.) Finally, Plaintiff alleges that Defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs. (*Id*.)

### III.    DISCUSSION[3]

A defendant may move for dismissal under Rule 12(b)(6) when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

Plaintiff brings this action under *Bivens*, a case in which the Supreme Court recognized an implied action for damages against federal officers pursuant to the Fourth Amendment's prohibition against unreasonable searches and seizures. *Bivens*, 403 U.S. at 389, 397. Since

---

[3] In issuing a ruling on the pending motion to dismiss, the Court has relied upon exhibits submitted by Plaintiff with his original complaint which he did not re-submit with the amended complaint but which he referred to extensively in his amended pleading. (*See* Dkt. # 6-2.) The Court deems these documents to have been incorporated by reference into the amended complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court also takes judicial notice of the BOP policies submitted by Defendants in support of their motion to dismiss. (Dkt. # 31, Exs. A-C.) *See Ritchie*, 342 F.3d at 909 ("Courts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'").

REPORT AND RECOMMENDATION
PAGE - 6

1    *Bivens* was decided in 1971, the Supreme Court has recognized *Bivens* claims in only two other

2    instances. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (allowing a damages remedy

3    under the Fifth Amendment Due Process Clause against a congressman for gender

4    discrimination); *Carlson v. Green*, 446 U.S. 14, 19 (1980) (allowing a damages remedy under

5    the Eighth Amendment against federal jailers for failure to provide adequate medical care to an

6    inmate).

7        In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court made clear that

8    "expanding the *Bivens* remedy is now a 'disfavored' judicial activity" and noted that it has

9    "consistently refused to extend *Bivens* to any new context or new category of defendants"

10   beyond those recognized in *Davis* and *Carlson*. *Id*. at 1857 (citations omitted). The *Abbasi* Court

11   cautioned against expanding the *Bivens* remedy and identified a two-step inquiry for courts to

12   determine whether a *Bivens* claim should be allowed to proceed. *Id*. at 1857, 1859-60. First, a

13   court must determine whether a plaintiff's claims arise in a new *Bivens* context. *Hernandez v.*

14   *Mesa*, 140 S. Ct. 735, 743 (2020). If a court concludes that the claims arise in a new context, it

15   must then determine whether *Bivens* should be extended into that new context. *Id*. A court can

16   extend *Bivens* only if two conditions are met: (1) "the plaintiff must not have any other adequate

17   alternative remedy;" and (2) "there cannot be any 'special factors' that lead [the court] to believe

18   that Congress, instead of the courts, should be the one to authorize a suit for money damages."

19   *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018), *vacated on other grounds by Swartz v.*

20   *Rodriguez*, 140 S. Ct. 1258 (2020).

21       Defendants argue in their motion to dismiss that Plaintiff's Eighth Amendment claim

22   should be dismissed because the Eighth Amendment applies only to claims brought by

23   individuals who have been convicted and sentenced. (Dkt. # 30 at 2.) Defendants further argue

REPORT AND RECOMMENDATION
PAGE - 7

1    that Plaintiff's Fifth Amendment claims should be dismissed because they arise in a new *Bivens*

2    context, Plaintiff has adequate alternative remedies available to him, and special factors counsel

3    hesitation by the Court in expanding *Bivens* remedies to these new constitutional claims. (*See id.*)

4    Finally, Defendants argue that dismissal of Plaintiff's Fifth Amendment claims is appropriate

5    because Plaintiff has failed to state a claim for relief under Rule 12 of the Federal Rules of Civil

6    Procedure. (*Id.*)

7        **A.    Fifth Amendment vs. Eighth Amendment**

8        Defendants first argue that Plaintiff's Eighth Amendment claim should be dismissed

9    because Plaintiff was in "pre-sentence or holdover detention" at times relevant to this action and

10   that his claims that BOP personnel violated his rights therefore arise only under the Fifth

11   Amendment. (Dkt. # 30 at 6-7.) The United States Supreme Court has been clear that when the

12   rights of pretrial detainees are at issue, the Eighth Amendment has no applicability because the

13   government "does not acquire the power to punish with which the Eighth Amendment is

14   concerned until after it has secured a formal adjudication of guilt in accordance with due process

15   of law." *Ingraham v. Wright*, 430 U.S. 651, 672 n.40 (1977). It is, instead, the Due Process

16   Clause of the Fifth Amendment that applies to conditions of confinement claims asserted by

17   federal pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). In *Bell*, the Supreme

18   Court defined "pretrial detainees" as "those persons who have been charged with a crime but

19   who have not yet been tried on the charge." *Id.* at 523.

20       The record makes clear that the government had, in fact, "secured a formal adjudication

21   of guilt" at the time the claims asserted in this action arose. Defendants suggest that the fact that

22   Plaintiff was, during the relevant time period, both a "pre-sentence" inmate and a "holdover"

23   inmate means he should be treated as a pretrial detainee for purposes of constitutional analysis.

REPORT AND RECOMMENDATION
PAGE - 8

While Plaintiff's status as a "holdover" detainee may have relevance in the context of BOP operations, it has no significance in determining the constitutional provision applicable to Plaintiff's claims. To the extent Defendants maintain that Plaintiff's status as a "pre-sentence" inmate is somehow determinative in identifying the applicable constitutional provision, they cite to no authority which supports that proposition.

Moreover, the Court is aware of no authority that limits *Ingraham's* holding, as described above, to only sentenced inmates. Notably, the Ninth Circuit, in a case in which it was called upon to decide whether a federal prisoner had a liberty interest in being free from placement in disciplinary segregation, concluded that a convicted but not yet sentenced inmate should be treated as a sentenced inmate. *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (citing *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (holding that a claim by a convicted prisoner awaiting sentencing is governed by the Eighth Amendment); *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) (holding that, when determining whether the Eighth or Fourteenth Amendment governs an inmate's claim, "[t]he critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated.").)

Because Plaintiff had already been convicted at the time the claims asserted in this action arose, the Eighth Amendment and not the Fifth Amendment is implicated. Thus, to the extent Defendants move to dismiss Plaintiff's Eighth Amendment claim their motion should be denied. However, the conclusion that the Eighth Amendment applies to Plaintiff's claim pertaining to the adequacy of the medical care he received at FDC SeaTac necessarily means that the Fifth Amendment does not apply. Plaintiff's Fifth Amendment due process claim should therefore be dismissed.

REPORT AND RECOMMENDATION
PAGE - 9

**B.      New *Bivens* Context**

The Court, having determined the constitutional provision applicable to Plaintiff's

medical care claims, now turns to the question of whether Plaintiff's Fifth Amendment equal

protection claim and his Eighth Amendment deliberate indifference claim arise in a new *Bivens*

context. A case presents a new *Bivens* context if the case is "different in a meaningful way from

previous *Bivens* cases decided by [the Supreme Court.]" *Abbasi*, 137 S. Ct. at 1859. In *Abbasi*,

the Court explained that

> [a] case might differ in a meaningful way because of the rank of the officers
> involved; the constitutional right at issue; the generality or specificity of the
> official action; the extent of judicial guidance as to how an officer should respond
> to the problem or emergency to be confronted; the statutory or other legal
> mandate under which the officer was operating; the risk of disruptive intrusion by
> the Judiciary into the functioning of other branches; or the presence of potential
> special factors that previous *Bivens* cases did not consider.

*Id*. at 1860.

Plaintiff asserts that his rights under the Equal Protection Clause of the Fifth Amendment

were violated when Defendants denied him treatment for Hepatitis C as a pretrial inmate while

authorizing such treatment for inmates who had been sentenced.[4] (Dkt. # 14 at 7.) The Supreme

Court has recognized a *Bivens* remedy under the Fifth Amendment only in the context of an

employment discrimination claim. *See Abbasi*, 137 S. Ct. at 1859. The Supreme Court has never

recognized a *Bivens* remedy for Fifth Amendment equal protection claims arising in the prison

context. Plaintiff's Fifth Amendment equal protection claim therefore presents a new *Bivens*

context.

---

[4] As discussed above, Plaintiff was not a "pretrial" inmate, as defined by the courts, at any time relevant
to the claims asserted in this action. It appears that FDC SeaTac staff may have used the term "pretrial" to
describe, generally, an inmate who had not yet been sentenced and designated to a facility.

REPORT AND RECOMMENDATION
PAGE - 10

Plaintiff's Eighth Amendment claim presents a slightly closer question. Plaintiff alleges that Defendants' denial of his requests for treatment for his Hepatitis C amounted to deliberate indifference to a serious medical need. (*See* Dkt. # 14 at 7.) Defendants correctly note that the closet analogue in the prior *Bivens* line of cases to the instant case is *Carlson*. In *Carlson*, the Supreme Court recognized an implied damages remedy under *Bivens* for an Eighth Amendment medical care claim. This does not mean, however, that *Bivens* necessarily extends to every Eighth Amendment claim. As the *Abbasi* court observed, "even a modest extension [of *Bivens*] is still an extension." *Abbasi*, 137 S. Ct. at 1864. Plaintiff's Eighth Amendment claim is similar to the Eighth Amendment claim alleged in *Carlson* to the extent that the claims in both cases pertain to the provision of medical care in a federal correctional facility. However, the deprivation alleged in *Carlson* is demonstrably different than that alleged in this case.

In *Carlson*, suit was brought by the estate of a deceased federal prisoner against prison officials and employees alleging that the prisoner was denied medical treatment "so clearly inadequate as to amount to a refusal to provide essential care, so inappropriate as to evidence intentional maltreatment causing death." *Green v. Carlson*, 581 F.2d 669, 675 (7th Cir. 1978). The prisoner in *Carlson* had been diagnosed as a chronic asthmatic when he entered the federal prison system. *Id*. at 671. Three years later, his condition required hospitalization at a hospital outside the federal penitentiary where he was confined. *Id*. Following eight days in the hospital, the prisoner was returned to prison where prison staff failed to give him proper medication or the steroid treatments ordered by the hospital physician. *Id*.

The prisoner subsequently suffered an asthmatic attack that caused him to be admitted to the prison hospital. *Id*. Despite the fact that the prisoner was in serious condition for about eight hours, no physician was on duty nor was one called in. *Id*. As the prisoner's condition

1  deteriorated, the non-licensed nurse in charge of the hospital left the prisoner alone for a period

2  of time to attend to other duties. *Id*. The nurse thereafter attempted to use a respirator known to

3  be inoperative, further impeding the prisoner's breathing, and administered a contraindicated

4  drug. *Id*. The prisoner suffered a respiratory arrest following administration of the second dose of

5  the contraindicated drug and, though staff "brought emergency equipment to administer an

6  electric jolt" to the prisoner, staff did not know how to operate the machine. *Id*. The prisoner was

7  finally moved to an outside hospital where he was pronounced dead on arrival. *Id*.

8      In this case, Plaintiff complains that he was denied treatment for his Hepatitis C based

9  solely on a BOP policy which precluded prisoners who had not yet been sentenced and

10  designated to a facility from receiving treatment, and which identified priority levels for

11  prisoners seeking treatment based on the seriousness of their disease. Plaintiff was assigned to

12  the lowest of the three priority levels based on his APRI score. Though Plaintiff identifies in his

13  amended complaint some of the symptoms he claims to have suffered as a result of his Hepatitis

14  C, the extent to which he may have sought medical treatment to address those symptoms is

15  unclear. The primary focus of Plaintiff's pleading, and the crux of his deliberate indifference

16  claim, is that there was a viable treatment for his disease, one made available to other inmates,

17  and Defendants refused his demands that he be provided the treatment without delay because his

18  request was inconsistent with BOP policy.

19      Thus, unlike in *Carlson* where there were allegations of a significant failure of the

20  medical delivery system which ultimately resulted in the prisoner's death, here the allegations

21  concern the application of a policy which Plaintiff believes was inequitable and/or discriminatory

22  and prevented him from receiving the immediate medical treatment he desired. The substantial

23  difference in the factual context of the two cases is sufficient for this Court to conclude that the

REPORT AND RECOMMENDATION
PAGE - 12

Eighth Amendment claim asserted here presents a new *Bivens* context. The Court must next consider whether *Bivens* should be extended to Plaintiff's Fifth Amendment equal protection claim and his Eighth Amendment deliberate indifference claim.

### C.    Expansion of *Bivens* Remedies

In determining whether *Bivens* should be extended into the new contexts presented by this case, the Court considers whether there are alternative remedies available to the Plaintiff or other "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Abbasi*, 137 S. Ct. at 1865. The Supreme Court explained in *Abbasi* that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."[5] *Id*. Post-*Abbasi*, the Ninth Circuit concluded that where a plaintiff has adequate alternative remedies, a court may decline to expand *Bivens* without consideration of other special factors that would counsel hesitation to extend *Bivens*. *See Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018).

Defendants argue that Plaintiff had several alternative remedies available to him including: (1) the Federal Tort Claims Act, (2) Washington State law, (3) the BOP's administrative remedy program, (4) the Administrative Procedure Act, (5) the Prison Litigation Reform Act, and (6) injunctive relief. (Dkt. # 30 at 11-12.) The Court is not convinced that Plaintiff had available to him the plethora of remedies suggested by Defendants. However, it is clear that Plaintiff, at the very least, had remedies available to him under the BOP's administrative remedy program which he did, in fact, utilize in an effort to resolve his claims. In addition, because Plaintiff is effectively challenging a BOP policy, he could have brought claims for injunctive relief outside of *Bivens*. *See Correctional Services Corporation v. Malesko*, 534

---

[5] The Supreme Court has explained that alternative remedies and a potential *Bivens* remedy "need not be perfectly congruent." *Minneci v. Pollard*, 565 U.S. 118, 129 (2012).

REPORT AND RECOMMENDATION
PAGE - 13

U.S. 61, 74 (2001) ("[U]nlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.") Because Plaintiff had other remedies available to him, a *Bivens* remedy should not be extended to Plaintiff's Fifth and Eighth Amendment claims.

### D.      Eighth Amendment Deliberate Indifference

Even assuming Plaintiff could bring a *Bivens* claim under the Eighth Amendment based on the alleged denial of adequate medical care, he fails to state a cognizable claim for relief. As explained above, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court further explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The treatment a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Id*. This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking reasonable measures to guarantee the safety of inmates. *Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id*. at 834.

REPORT AND RECOMMENDATION
PAGE - 14

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

The Ninth Circuit has explained that "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks omitted). "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

It is well established that a mere difference of opinion concerning proper medical care is not sufficient to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). In order to prevail on an Eighth Amendment claim which involves choices between alternative courses of treatment, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id*. at 332 (citations omitted).

Plaintiff alleges no facts in his amended complaint from which the Court could reasonably infer that Defendants violated his Eighth Amendment rights. As explained above,

REPORT AND RECOMMENDATION
PAGE - 15

Plaintiff's complaint is essentially about a BOP policy which precluded him from receiving treatment while he was confined at FDC SeaTac because that was not his designated facility and because his APRI score, which is used to predict the presence of fibrosis and cirrhosis, placed him at a lower priority level to receive treatment. While Plaintiff asserts in his amended complaint that he suffered occasional symptoms attributable to his Hepatitis C, including pain, discomfort and fatigue, he does not allege facts demonstrating that he had a compelling or urgent need for treatment while at FDC SeaTac. It is important to note that Plaintiff was not denied all access to treatment, the desired treatment was merely deferred until he arrived at his designated facility, FCI Sheridan. Plaintiff makes clear in his amended complaint that he was successfully treated for his Hepatitis C after he arrived at FCI Sheridan. (*See* Dkt. # 14 at 19.)

Plaintiff claims that the delay in receiving treatment caused him harm because "[i]t has been proven that everyday Hep. C. is left untreated, it causes [irreparable] and [irreversible] damage." (*Id.* at 20.) This allegation is vague and conclusory at best. Plaintiff alleges no facts demonstrating that he suffered any actual or substantial harm as a result of the delay. In this Court's view, Plaintiff's Eighth Amendment claim alleges, at most, a difference of opinion concerning proper medical care. Plaintiff deemed it imperative to obtain the treatment immediately whereas Defendants relied on BOP clinical guidelines to defer treatment temporarily. The fact that Defendants relied on those guidelines is insufficient to establish deliberate indifference. Accordingly, Plaintiff's Eighth Amendment claim is subject to dismissal for failure to state a claim upon which relief may be granted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## IV.    CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion to dismiss (dkt. # 30) be granted, and that Plaintiff's amended complaint (dkt. # 14) and this action be dismissed with prejudice. A proposed Order accompanies this Report and Recommendation.

## V.    OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 2, 2021**.

DATED this 10th day of March, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17