UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT A. STANARD,<br><br>Plaintiff,<br><br>v.<br><br>MARIA DY, *et al.*,<br><br>Defendants. | CASE NO. C19-1400-RSM<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING ACTION |

## I. INTRODUCTION

This matter comes before the Court on the Report and Recommendation ("R & R") of the Honorable Michelle L. Peterson, United States Magistrate Judge. Dkt. #36. The Court has reviewed Plaintiff's complaint, Defendants' motion to dismiss, the R & R, Plaintiff's objections thereto, and the remaining record. The Court agrees with the R & R that Defendants' motion to dismiss should be granted, and that Plaintiff's complaint and this action should be dismissed with prejudice.

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING
ACTION
PAGE - 1

## II. BACKGROUND

**A. Factual Background**

The Court adopts the relevant factual background set forth in the R & R. *See* Dkt. #36 at 2-5. Plaintiff Robert Stanard proceeds pro se and in forma pauperis ("IFP") in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is currently confined at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). However, the claims at issue in this action took place during Plaintiff's confinement at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac") in 2018 before his transfer to FCI Sheridan.

Plaintiff entered FDC SeaTac on November 10, 2016, was remanded to custody after an initial appearance, and was subsequently ordered detained pending trial. Plaintiff arrived at FDC SeaTac with a pre-existing Hepatitis C diagnosis. Plaintiff claims he discussed his Hepatitis C diagnosis and possible treatment with Dr. Maria Dy, medical doctor at FDC SeaTac, upon arrival to SeaTac but refused medical help at that time. Dkt. #32 at 5.

Plaintiff was convicted in early January 2018 and sentenced on July 13, 2018. He remained at FDC SeaTac until late September 2018, at which point he was transferred to FCI Sheridan. Following his conviction, Plaintiff began requesting treatment for his Hepatitis C from FDC SeaTac staff, including Dr. Dy, Health Services Administrator McDermont, and Warden Dan Sproul. Defendants rejected his request because he was considered a pretrial detainee, and his AST-Platelet Ration Index ("APRI"), used by the U.S. Bureau of Prisons ("BOP") to assess liver fibrosis and cirrhosis, was not within the range to receive priority treatment under then-existing BOP policy.

//

Plaintiff pursued his requests for Hepatitis C treatment through the BOP administrative process. He submitted a BP-8 form on March 2, 2018 and, after not receiving a response, submitted a second request in April 2018 asking for immediate treatment. On May 13, 2018, Plaintiff received a response to his second request explaining that he was denied based on his status as a pretrial detainee and APRI level, but that he would continue to be monitored.

Plaintiff then submitted a BP-9 request to Warden Sproul, which was denied on May 22, 2018 on the same basis related to his pretrial detainee status and APRI level. On May 30, 2018, Plaintiff timely appealed the warden's decision by submitting a BP-10 to the Western Regional Director, J. Baltazar. Plaintiff argued that his status had changed given that he was convicted in January 2018, and that his disease affected his enjoyment and participation in daily activities. On October 7, 2018, after not receiving a timely response to his BP-10 from the Western Regional Director, Plaintiff appealed to the central office by submitting a BP-11. By that time, Plaintiff had recently been transferred to FCI Sheridan.

On December 6, 2018, Plaintiff received a response to his BP-10 appeal concluding that Plaintiff had received appropriate care consistent with BOP clinical guidelines. Before Plaintiff received responses to his appeals, the BOP updated its clinical guidance for Hepatitis C treatment that allowed treatment to all inmates, including pre-trial detainees. Following his transfer to FCI Sheridan, Plaintiff informed medical staff there that he wanted to receive Hepatitis C treatment. New laboratory tests were ordered and Plaintiff was placed on a list for follow-up evaluation. After he was authorized to receive treatment, Plaintiff successfully completed an eight-week course of treatment in May 2019.

//

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING
ACTION
PAGE - 3

## B. Procedural Background

Plaintiff filed this action on August 30, 2019 seeking $30 million in damages against federal officers under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Dkt. #1. In his amended complaint, Plaintiff alleges violations of his Fifth Amendment right to equal protection for Defendants' denial of his Hepatitis C treatment based on his status as a pretrial inmate, while providing that treatment to other inmates who were already sentenced. Dkt. #14. Plaintiff also alleges violations of his Fifth Amendment right to due process for Defendants' failure to properly address his medical needs as a pre-trial inmate. Lastly, Plaintiff claims violations of his Eighth Amendment rights based on Defendants' deliberate indifference to his medical needs.

On December 21, 2020, Defendants moved to dismiss Plaintiff's claims. Dkt. #30. On March 10, 2021, Judge Peterson issued the R & R recommending that this Court grant Defendants' motion to dismiss. Dkt. #36. The R & R determined that because Plaintiff was already convicted at the time the asserted claims arose, the Eighth Amendment and not the Fifth Amendment was implicated, thereby dismissing Plaintiff's Fifth Amendment due process claim. *Id.* at 9. The R & R further determined that both of Plaintiff's remaining *Bivens* claims arose in a new context, and because Plaintiff had other remedies available to him, *Bivens* was not properly extended to his claims. *Id.* at 14. Lastly, the R & R concluded that even if Plaintiff could have brought a *Bivens* claim under the Eighth Amendment, he had failed to state a cognizable claim for relief on the basis that Plaintiff alleged no facts from which the Court could reasonably infer that Defendants violated his Eighth Amendment rights. *Id.* at 14-16.

//

//

## III.   DISCUSSION

### A. Legal Standard

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  The Court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

### B. Plaintiff's Objections

Plaintiff objects to the R & R on six bases: (1) his Eighth Amendment claim did not arise in a new *Bivens* context; (2) he alleged sufficient facts for the Court to reasonably infer that Defendants violated his Eighth Amendment rights; (3) the R & R impermissibly narrowed his complaint; (4) Defendants' reliance on the BOP policy was sufficient to establish deliberate indifference; (5) Plaintiff need not show he suffered substantial harm as a result of delay; and (6) regardless of whether Plaintiff received treatment, he should still receive damages for his pain and suffering.  Because the R & R correctly determined that Plaintiff cannot bring his Eighth Amendment claim under *Bivens*, the Court need not reach Plaintiff's remaining objections.

#### 1. New *Bivens* Context

First, Plaintiff argues that Judge Peterson erred in concluding that his Eighth Amendment deliberate indifference claim under *Bivens* arose in a new context. *See* Dkt. #40 at 2-3.  For the reasons set forth below, the Court finds no error in the R & R's conclusion.

In *Bivens*, the U.S. Supreme Court held that even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures. *Bivens*, 403 U.S. at 397. The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." *Id.* at 396. However, it noted that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. *Id.* at 396–97, 91 S.Ct. 1999. The Court held that it could authorize a remedy under general principles of federal jurisdiction. *See id.* at 392 (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)). Since then, the Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity, in recognition that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U. S. 61, 68 (2001). In *Ziglar v. Abbasi*, the Supreme Court set forth the test for determining whether a case presents a new *Bivens* context:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S.Ct. 1843, 1859–60 (2017). In determining whether a *Bivens* remedy should be recognized in that case, the Court in *Abbassi* compared the respondents' claims to already recognized *Bivens*

claims and noted that a new context arises in cases where "even a modest extension" exists. *Id.* at 1864.

In applying the test set forth in *Abbassi*, Judge Peterson determined that the closest case to Plaintiff's claims was *Carlson v. Green*, wherein the U.S. Supreme Court extended *Bivens* to provide a remedy against federal officials responsible for deliberate indifference to a plaintiff's chronic asthmatic condition. *See* 446 U.S. 14, 16 n.1 (1980). The R & R distinguished the facts at issue here from those in *Carlson*, where "a significant failure of the medical delivery system . . . . ultimately resulted in the prisoner's death . . . ." Dkt. #36 at 12. Here, in contrast, Plaintiff's allegations address the BOP's "application of a policy which Plaintiff believes was inequitable and/or discriminatory and prevented him from receiving the immediate medical treatment he desired." *Id.* Consequently, the R & R concluded that the deprivation alleged in *Carlson* was "demonstrably different" than the deprivation alleged here. *Id.*

While Plaintiff argues that "the mechanism of the injury" was the same in *Carlson* with respect to officials' failure to provide medical treatment, Dkt. #40 at 2, the Court disagrees. Here, Plaintiff challenges officials' application of BOP's former policy that denied administration of Hepatitis C treatment to prisoners who had not yet been sentenced and were below a certain APRI score. In *Carlson*, in contrast, prison officials failed to give the plaintiff proper medication or steroid treatments ordered by the hospital physician, failed to call in any physician to the prison hospital after he suffered an asthmatic attack, impeded plaintiff's breathing by attempting to use a respirator known to be inoperative and administering a contraindicating drug, which lead to the prisoner's respiratory arrest, and unsuccessfully attempted to administer an "electric jolt" despite not knowing how to operate the machine. *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978).

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING
ACTION
PAGE - 7

The culmination of these events was prison staff moving plaintiff to an outside hospital, where he was pronounced dead on arrival. *Id.* Given these key factual distinctions, the Court finds that this case differs in a "meaningful way" from the claims at issue in *Carlson*. For these reasons, the Court finds no error in the R & R's conclusion that his Eighth Amendment *Bivens* claim arose in a new context.

Plaintiff also argues that the Court has "extended the deliberate indifference standard to Eighth Amendment claims involving medical care" in *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Dkt. #40 at 3. However, *Wilson* did not address a *Bivens*-type claim and is therefore inapposite. *See Wilson*, 501 U.S. at 296.

2. Extension of *Bivens* to New Context

Having determined that Plaintiff's claims arose in a new *Bivens* context, the Court considers whether the R & R erred in concluding that *Bivens* should not be extended to this new context. Plaintiff has raised no objection to the R & R's conclusion that extension of *Bivens* is improper here. *See generally* Dkt. #40. Under *Rodriguez v. Swartz*, two conditions must be satisfied for a court to extend *Bivens* to a new context: (1) "the plaintiff must not have any other adequate alternative remedy;" and (2) "there cannot be any 'special factors' that lead [the court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." 899 F.3d 719, 738 (9th Cir. 2018), *vacated on other grounds by Swartz v. Rodriguez*, 140 S. Ct. 1258 (2020)).

Here, the R & R correctly concluded that *Bivens* should not be extended to this new context based on the alternative remedies available to Plaintiff. Dkt. #36 at 13 ("[I]t is clear that Plaintiff, at the very least, had remedies available to him under the BOP's administrative remedy

ORDER ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING
ACTION
PAGE - 8

program which he did, in fact, utilize in an effort to resolve his claims."). Furthermore, because Plaintiff was challenging a BOP policy, he could have brought claims for injunctive relief outside of *Bivens*. *Id.* (citing *Malesko*, 534 U.S. at 74 ("Unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for entities acting unconstitutionally.")).

On this basis alone, the R & R correctly determined that Plaintiff's Fifth Amendment equal protection claim and Eighth Amendment deliberate indifference claim should be dismissed with prejudice.

Plaintiff's remaining objections address the R & R's alternative conclusion that, even if his *Bivens* claim did not arise in a new context, he failed to state a claim under the Eighth Amendment for deliberate indifference. *See* Dkt. #40 at 3-12. Because this Court has already determined that Plaintiff cannot bring his Eighth Amendment deliberate indifferent claim under *Bivens*, it need not address Plaintiff's objections as to whether he sufficiently stated a claim for relief.

### IV.     CONCLUSION

Accordingly, having reviewed Plaintiff's civil rights complaint, the Report and Recommendation of Judge Peterson, and the remainder of the record, the Court hereby finds and ORDERS:

1)     The Report and Recommendation, Dkt. #36, is APPROVED and ADOPTED.

2)     Defendants' motion to dismiss, Dkt. #30, is GRANTED.

3)     Plaintiff's amended complaint and this action are DISMISSED with prejudice.

4) The Clerk shall send a copy of this Order to Plaintiff, to counsel for Defendants, and to the Honorable Michelle L. Peterson.

DATED this 1st day of July, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE