```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

           MAY 21 2024    KS
             AT SEATTLE
       CLERK U.S. DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
   BY                        DEPUTY
```

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ROBERT A. STANARD, | CASE NO. CV19-1400-RSM |
| PLAINTIFF, | |
| VS. | MOTION FOR SUMMARY JUDGEMENT |
| MARIA DY, et. al., | |
| DEFENDANTS | |

Comes now, Pro Se Plaintiff, Robert A. Stanard, and hereby requests this summary judgement be GRANTED in his favor, as to his Eighth Amendment claim against the defendants. Mr. Stanard asks this court to liberally construe this pleading and must be held to less stringent standards than formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## FACTS

Stanard contracted Hepatitis C Virus ("HCV") at a Bureau of Prisons ("BOP") facility in 2009. In November 2016, Stanard was arrested for being a felon in possession of a firearm and detained at Federal Detention Center SeaTac pending trial. Stanard declined HCV treatment during his first meeting with Dr. Maria Dy at SeaTac because he was suffering from a mental health crisis and, in his own words, "just wanted to die."

In January 2018, Stanard was found guilty of firearm possession and related charges. In February or March 2018, while still at SeaTac pending sentencing, Stanard started to seek treatment for HCV. He met with Dr. Dy again, who told him that he was "not qualified" for treatment at the time, based on his January 2 AST ("aspartate aminotransferase")-to-platelet ratio index ("APRI") of 0.41.[2] On March 2, Stanard submitted a BP-8, a Bureau of

Prisons informal complaint form, requesting HCV treatment. He did not receive a response. When Stanard followed up with his counselor, he was told to fill out another BP-8. Stanard submitted the second BP-8 on April 3. His counselor responded on May 13, rejecting Stanard's request for treatment because he was "treatment Priority Level 3 and a pre-trial inmate[.] [BOP] is currently focusing on treating designated Priority 1&2 Level inmates. You will continue to be monitored accordingly."

Stanard began the formal complaint process by filing a BP-9 form ("Request for Administrative Remedy") on May 15. Stanard complained of abdominal pain. He had just witnessed the decline and death of a fellow inmate from untreated HCV and was worried that "without a valid course of treatment I will die at a much quicker rate than normal []." The Warden denied Stanard's BP-9 request on May 22, noting that Stanard was "treatment Priority Level 3 and a pre-trial inmate." On May 30, 2018, Stanard appealed the Warden's decision by filing a BP-10 ("Regional Administrative Remedy Appeal Form") with the regional medical director. On September 28, before receiving a response to his appeal, Stanard was transferred to Federal Correctional Institution ("FCI") Sheridan.

Because he had not received a response to his BP-10, Stanard filed a BP-11 ("Central Office Administrative Remedy Appeal Form") on October 7, 2018. He saw a doctor at FCI Sheridan on November 19, and again requested HCV treatment. The doctor told Stanard he would receive HCV treatment after "a short wait." Responses to Stanard's BP-10 and BP-11 forms came on December 6 and November 13, respectively. In both responses, the BOP concluded that Stanard was receiving adequate care in spite of any delay in or denial of HCV treatment. Stanard began HCV treatment at FCI Sheridan in November or December 2018. By May 2019, midway through his treatment, Stanard's lab tests no longer detected HCV.

## PROCEDURAL HISTORY

Stanard filed a pro se complaint in the Western District of Washington on August 30, 2019. His operative first amended complaint ("Complaint") sought damages under Bivens, alleging that various BOP officials (1) were deliberately indifferent to Stanard's medical needs, in violation of the Eighth Amendment prohibition against cruel and unusual punishment, and (2)

discriminated against him in denying treatment because of his "pre-trial" status, thus violating the Fifth Amendment Due Process clause.

This appeal to the NINTH Circuit followed: In Mr. Stanard's recent appeal in the Ninth Circuit, **STANARD V. DY, No. 21-35582 (9th Cir. 2023), He** appealed to the lower court's denials of his claims of wrongdoing. First, the court reversed the dismissal of Stanard's Eighth Amendment claim. The court found that his claim was not a new context for a Bivens action because it was similar to a previous case, Carlson v. Green, where the Supreme Court recognized a Bivens remedy for prison officials who were deliberately indifferent to an inmate's medical needs. The court rejected the defendants' argument that the prison officials in Stanard's case denied him care due to a Bureau of Prisons policy, while the officials in Carlson acted so inappropriately as to evidence intentional maltreatment causing death, holding that the difference in degree was not a meaningful difference that would create a new context.

Delaying treatment is an established example of deliberate indifference

to a serious medical need, in violation of the Eighth Amendment. Even assuming Stanard received less deficient care than the inmate in Carlson, that difference in degree was not a meaningful difference giving rise to a new context. Moreover, Stanard was not simply challenging a broadly applicable BOP policy. His complaint alleged, among other things, that defendants relied on outdated medical records in refusing him treatment for Hepatitis C.

The Federal Appellate Circuit Court reversed the District Court's decision dismissing Mr. Stanard's Deliberate Indifference 8th Amendment claim. This motion for summary judgement now follows.

## ARGUMENT

Summary judgement is to be **GRANTED** if the record before the District Court shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgement as a matter of law." See Rule 56(c)(2) of the Federal Rules of Civil Procedure.

The District Court may grant summary judgement on the whole case or on part of the case. For example, summary judgement can be granted on some legal claims and not others. See **Spann v. Roper, 453 F.3d 1007, 1008-1009 (8th Cir.)** (affirming summary judgement for prison nurse for giving plaintiff the wrong medication, but denying summary judgement for failure to respond to his symptoms afterwards); **Richardson v. Coughlin, 763 F. Supp. 1228 (S.D.N.Y. 1991)** (granting summary judgement to the plaintiff on one issue and to the defendants on one issue, and denying it on the third issue). The District Court can grant summary judgement for or against some parties but not others. See e.g., **Zeimba v. Armstrong, 430 F.3d 623 (2nd Cir. 2005); Curry v. Scott, 249 F.3d 493, 499 (6th Cir. 2001)**. Lastly the Court may grant summary judgment on liability but not on damages. See **Fed. R. Civ. P. Rule 56(d)(2); Patterson v. Coughlin, 905 F.2d 564, 570-71 (2nd Cir. 1990); Alexander v. Perrill, 836 F. Supp 701, 706 (D. AZ. 1993)** (Summary judgement is granted as to liability).

The District Court is supposed to decide a summary judgement motion based on facts that are properly put before it. Mr. Stanard has stated his personal knowledge in an affidavit, in support of summary judgement. See **Exhibit A** attached to this motion.

See **Spann v. Roper, 453 F.3d 1007 (8th Cir. 2006)** (In this medical care case, the court found it "incongruous" that the district court denied the plaintiff's motion for appointment of an expert witness and then granted summary judgement in part because of his failure to supply medical evidence.).

- Hepatitis C is a viral infection that causes liver disease, which in some cases may progress to cirrhosis (serious scarring of the liver) which can be fatal. See **Exhibit B** – Mayo Clinic's overview of Hep C. As in the original complaint the Plaintiff had submitted published findings of facts regarding Hep C, its dangers, its symptoms, and side effects. The Plaintiff had experienced several symptoms of having the virus. For example, he suffered loss of appetite, his weight fluctuated many times, and he was fatigued nearly every day, the nausea, and the bloating of the abdomen ( Ascites (accumulation of fluid and swelling of the abdominal cavity)), bruising easily, diarrhea, and itching (the feeling of tiny bugs crawling all over the body day in and day out) while he fought for a viable treatment that other inmates were getting that he should have been given without having to suffer such mental,

physical, and emotional damage. The mental damage he went through was watching and helping a fellow inmate brutally and painfully succumb to the very disease that he was fighting for treatment to prevent that very same thing happening to him. Physical damage to his liver caused by untreated Hep C.

Inside the prison walls, it's a breeding ground for this deadly disease. It spreads from blood-to-blood contact with a person who is infected with it. There is a pretty long list of RISK Factors whether a person is at high risk of contracting the virus if they are among any of these factors that follow.

This includes:

    1) anyone who has ever injected, snorted, or inhaled an illegal drug;

    2) anyone who has atypical liver test results in which the cause wasn't found;

    3) babies born from someone who has hepatitis C.;

    4) pregnant people during the pregnancy;

    5) healthcare and emergency workers who have been in

contact with blood or been stuck by a needle;

6) people with hemophilia who were treated with clotting factors before 1987;

7) people who have had long-term hemodialysis;

8) people who got donated blood or organ transplants 1982;

9) sexual partners of anyone diagnosed with Hep C. Infection;

10) people with HIV infection;

11) men who have sex with men;

12) sexually active people about to start taking medicine to prevent HIV, called pre-exposure prophylaxis or PrEP;

13) **Anyone who has been in prison.**

This list is from the well renowned Mayo Clinic. The closest thing to an expert opinion that the Plaintiff can come up with or afford. Upon the

Plaintiff entering into the FBOP SeaTac, a blood test was positive for the Hep C antibody through a blood test.

The Plaintiff sought treatment for his Hep C, by requesting a number of times to the defendants listed within his Bivens suit. At each level of the grievance process he asked the next person to "please help me". It can be concluded by the number of appeals the Plaintiff filed throughout the process, and the number of medical requests, that the Plaintiff submitted, he was consistently experiencing not just symptoms, but the horrible, painful, and depressing side effects of having that disease. The defendants were deliberately indifferent to his **SERIOUS** medical need. See **Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).** Hep C complaints are decided under the same deliberate indifference standard as they are applied to all other medical care claims. **Brown v. Johnson;** see also **Erickson v. Pardus, 551 U.S. 89,94 (2007).** Blood tests alone are not conclusive to the level of sorosis a person may be experiencing at the time. It is a proven fact that Hep C. **"DOES"** pose a serious medical need.

When the FBOP places restrictive rules and practices that prevented the Plaintiff from receiving Hep C treatment, could in fact constitute a violation under the 8th Amendment, and Deliberate Indifference. See **Johnson v.**

**Wright, 412 F.3d 398, 406 (2nd Cir. 2005); McKenna v. Wright, 386 F.3d, 432, 437 (2nd Cir. 2004).**

It is undisputed that the defendants had firsthand knowledge that Mr. Stanard requested medical treatments for his "**SERIOUS MEDICAL NEED**", specifically his Hep C disease. It's undisputed that the defendants denied Mr. Stanard such treatment and that they knew or should have known Mr. Stanard had been experiencing pain as a result of such denials of treatments. **See EXHIBIT A.**

While Mr. Stanard may not show any present injury that such isn't necessary to prevail on his claim, only the likelihood of harm from the denial of the Hep C. treatment as well as society's view of the severity of such virus as his from the denial of such. See **Helling, 33-35.**; see e.g. **Warren v. Keane, 196 F.3d 330, 333 (2nd Cir. 1995); Atkinson v. Taylor, 316 F3.d 257, 264-265 (3rd Cir. 2003); Talal v. White, 403 F.3d 423,428 (8th Cir. 2005);** see also **Hudson v. McMillian, 503 U.S. 1, 8-9 (1942)** (objective element of deliberate indifference can be satisfied by pain alone, even on the absence of an "enduring injury"). Thus, it is undisputed that the defendants acted with a culpable state of mind, when they denied Mr.

Stanard's request for medical treatment and he does not need to demonstrate a significant injury. See **Wilkins v. Gaddy, 559 U.S. 34 (2010).**

In short, its undisputed the the defendants had before them "**verifiable medical evidence**" that Mr. Stanard had Hep C. See (**medical report in original complaint**). It is undisputed that the defendants knew or should have known that the 8th Amendment prohibits the "unnecessary and wanton infliction of pain." See **Estelle v. Gamble.**

It is undisputed that Mr. Stanard was in fact suffering ill effects from his untreated Hep C and properly informed the defendants of such ill effects thereof. See **Complaint.**

Therefore, summary judgement is warranted as it is reasonable that the defendants would perceive Mr. Stanard's medical need related to his Hep C. as "**important and worthy of comment or treatment**", the defendants knew or should have known Mr. Stanard's medical condition significantly affected his daily activities, and it is undisputed the defendants were aware of the existence of Mr. Stanard's chronic and substantial pain. See **Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)(citations omitted);** accord

Suarez v. Reiser, 338 F. Supp. 2d 442, 444 (W.D.N.Y. 2004); see also Carnell v. Grimm, 872 F. Supp. 746, 755 (D. Haw. 1994) and 74 F.3d 977 (9th Cir.1996).

## CONCLUSION

Based upon the above, This Court should **GRANT** summary judgement and order the defendants liable and to engage in settlement procedures based upon their deliberate and willful denial of Hep C. treatment toward Mr. Stanard.

Dated this 24th day of April, 2024.

Robert Stanard, Pro Se
17708 92nd Ave NW
Stanwood, Wa. 98292

**CERTIFICATE OF SERVICE**

This certifies that on ___5/9/24___ I sent copies of the following documents: ___MOTION FOR SUMMARY JUDGEMENT AND SWORN AFFIDAVIT___

to the opposing party by ☒ first class mail   ☐ certified mail, return receipt requested.
They were addressed as follows:

P.S.A.A
TESSA GORMAN
700 STEWART ST. SUITE 5220
SEATTLE, WA 98101 - 1271

Dated: ___5/9/24___

☒ Plaintiff/Petitioner   ☐ Defendant/Respondent,
Pro se (Check & sign)
Name: ROBERT STANARD

Address: 17708 92ND AVE, NW
~~SEATTLE, WA 98~~ STANWOOD, WA 98292
Phone: (360) 912-3926

ROBERT STANTON
17708 92ND AVE
STANWOOD, WA. 98292

US POSTAGE
$003.07
First-Class
ZIP 98292
05/09/2024
036B 0011817325

UNITED STATES ATTORNEY
TESSA M. GORMAN
700 STEWART ST., STE 5520
SEATTLE, WA 98101-1271

RECEIVED
MAY 15 2024
UNITED STATES ATTORNEY
SEATTLE, WASHINGTON

FILED _____ ENTERED
LODGED _____ RECEIVED

MAY 21 2024   KS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CV