UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT A. STANARD,<br><br>      Plaintiff,<br><br>  v.<br><br>MARIA DY, et al.,<br><br>      Defendants. | CASE NO. C19-1400-RSM<br><br>ORDER GRANTING MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendants' renewed Motion to Dismiss. Dkt. #52. For the following reasons, the Court shall GRANT Defendants' Motion.

## II. BACKGROUND

**A. Factual Background**

The Court adopts the relevant factual background from its previous Order, Dkt. #44, and the Ninth Circuit's Opinion, Dkt. #49. Plaintiff contracted Hepatitis C Virus while in a Bureau of Prisons ("BOP") facility in 2009. On November 10, 2016, Plaintiff entered the Federal

ORDER GRANTING MOTION TO DISMISS - 1

Detention Center at SeaTac, Washington ("FDC SeaTac") pending trial with this pre-existing diagnosis. Plaintiff discussed his diagnosis and possible treatment with Dr. Maria Dy, the FDC SeaTac medical doctor, but refused treatment at that time.

Plaintiff was convicted in January 2018 and sentenced on July 13, 2018. Following his conviction, Plaintiff requested treatment for his Hepatitis C from FDC SeaTac staff, including Defendants. Defendants rejected his request because he was considered a pretrial detainee, and his AST-Platelet Ration Index ("APRI"), used by the U.S. BOP to assess liver damage, was not within the range to receive priority treatment under then-existing BOP policy. Specifically, upon meeting with Dr. Dy again, Dr. Dy informed Plaintiff that his January 2, 2018, APRI of 0.41, below a 2.0, did not qualify him for priority treatment at that time. Though, as the Ninth Circuit noted, Plaintiff's APRI rose from a 0.6 to 2.51 sometime after November 2017, Plaintiff's APRI lowered to 0.41 by January 2, 2018.

Plaintiff then pursued his requests for treatment through the BOP administrative process by filing a BP-8 form on March 2, 2018. After receiving no response and on advice from his counselor, Plaintiff resubmitted his BP-8 on April 3. On May 13, 2018, Plaintiff's request was denied because he was "treatment Priority Level 3" due to his January 2 APRI and his pretrial detainee status. Plaintiff was informed that he would continue to be monitored.

Plaintiff then submitted a BP-9 request to Warden Dan Sproul on May 15, which was denied on May 22, 2018, on the same basis. Plaintiff complained of abdominal pain and worried that his health would decline after watching a fellow inmate die from untreated Hepatitis C. On May 30, 2018, Plaintiff appealed Warden Sproul's decision by submitting a BP-10 to the Western Regional Director, J. Baltazar. Plaintiff argued that his status had changed given that he was convicted in January 2018 and his disease affected his enjoyment and participation in daily

activities. On September 28, Plaintiff was transferred to Federal Correctional Institution ("FCI") Sheridan.

After receiving no response on his BP-10, Plaintiff filed a BP-11 appeal to the Central Office Administration on October 7, 2018. Plaintiff saw a doctor at FCI Sheridan on November 19 and was informed he would receive treatment soon.

Plaintiff received responses his BP-10 and BP-11 on November 13 and December 6. Both responses concluded that Plaintiff was receiving adequate care. At FCI Sheridan, new laboratory tests were ordered, and Plaintiff was placed on a list for follow-up evaluation. In November or December 2018, Plaintiff began treatment at FCI Sheridan and successfully completed treatment in May 2019.

**B.  Procedural Background**

Plaintiff filed this *pro se* and *in forma pauperis* action on August 30, 2019, seeking $30 million in damages under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 38 (1971). Dkt. #1. In his amended Complaint, Plaintiff alleges Eight Amendment violations based on Defendants' deliberate indifference to his medical needs, along with Fifth Amendment violations. Defendants moved to dismiss Plaintiff's claims on December 21, 2020. Dkt. #30. On March 10, 2021, United States Magistrate Judge Peterson issued the Report & Recommendation ("R&R") granting the dismissal. Dkt. #36. Regarding Plaintiff's Eight Amendment claims, Judge Peterson concluded that Plaintiff's *Bivens* claims arose in a new context, and *Bivens* was not properly extended to his claims because Plaintiff had other available remedies. *Id*. at 14. Judge Peterson also concluded that, even if Plaintiff could have brought a *Bivens* claim, he had failed to state a cognizable claim for relief on the basis that Plaintiff alleged no facts from which the Court could reasonably infer that Defendants violated his Eighth

Amendment rights. *Id*. at 14-16. Judge Peterson reasoned that, "at most," Plaintiff alleged "a difference of opinion concerning proper medical care." *Id*. at 16.

On July 1, 2021, this Court adopted the R&R, holding that Plaintiff's claims arose in a new context and declined to extend *Bivens* to redress his claims. Dkt. #44 at 5-9. This Court did not address the validity of Plaintiff's Eight Amendment Claims.

Plaintiff appealed this Court's Order on July 19, 2021. Dkt. #44. On December 11, 2023, the Ninth Circuit affirmed this Court's dismissal of Plaintiff's Fifth Amendment claims. Dkt. #49 at 14. However, finding that Plaintiff's Eight Amendment claims arise within an existing context under *Bivens*, the Ninth Circuit reversed this Court's decision on those claims. *Id*. at 13. On April 5, 2024, Defendants filed the instant Motion to Dismiss. Dkt. #52.

### III. DISCUSSION

**A. Legal Standard**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### B. Analysis

Defendants argue for dismissal because Plaintiff's Complaint fails to show deliberate indifference by any defendant and, at most, shows a difference of opinion regarding Plaintiff's medical treatment. *See gen*. Dkt. #52. Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The Eighth Amendment's prohibition on cruel and unusual punishment prevents government officials from acting with deliberate indifference to a prisoner's health and safety, *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002), or serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For an Eighth Amendment violation, a plaintiff must meet both an objective and subjective test for deliberate indifference: he must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective "deliberate indifference" test requires showing the prison officials: (1) were aware of a "substantial risk of serious harm" to his health or safety; and (2) had no "reasonable" justification for the deprivation despite the risk. *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

According to the Ninth Circuit, "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotes omitted). "[A]

ORDER GRANTING MOTION TO DISMISS - 5

serous medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). However, a mere difference of opinion over proper medical care is insufficient to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). To have a viable Eighth Amendment claim involving alternative medical treatment, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id*. at 332 (citations omitted).

Regarding Plaintiff's Eighth Amendment *Bivens* claim, U.S. Magistrate Judge Peterson recommended the following in her R&R:

> Plaintiff alleges no facts in his amended complaint from which the Court could reasonably infer that Defendants violated his Eighth Amendment rights. As explained above, Plaintiff's complaint is essentially about a BOP policy which precluded him from receiving treatment while he was confined at FDC SeaTac because that was not his designated facility and because his APRI score, which is used to predict the presence of fibrosis and cirrhosis, placed him at a lower priority level to receive treatment. While Plaintiff asserts in his amended complaint that he suffered occasional symptoms attributable to his Hepatitis C, including pain, discomfort and fatigue, he does not allege facts demonstrating that he had a compelling or urgent need for treatment while at FDC SeaTac. It is important to note that Plaintiff was not denied all access to treatment, the desired treatment was merely deferred until he arrived at his designated facility, FCI Sheridan. Plaintiff makes clear in his amended complaint that he was successfully treated for his Hepatitis C after he arrived at FCI Sheridan. (*See* Dkt. # 14 at 19.)
> Plaintiff claims that the delay in receiving treatment caused him harm because "[i]t has been proven that everyday Hep. C. is left untreated, it causes [irreparable] and [irreversible] damage." (Id. at 20.) This allegation is vague and conclusory at best. Plaintiff alleges no facts demonstrating that he suffered any actual or substantial harm as a result of the delay. In this Court's view, Plaintiff's Eighth Amendment claim alleges, at most, a difference of opinion concerning proper medical care. Plaintiff deemed it imperative to obtain the treatment immediately whereas Defendants relied on BOP clinical guidelines to defer treatment temporarily. The fact that Defendants relied on those guidelines is insufficient to establish deliberate indifference. Accordingly, Plaintiff's Eighth

Amendment claim is subject to dismissal for failure to state a claim upon which relief may be granted.

Dkt. #36 at 15-16.

The Court agrees with the R&R.  As stated above, though Plaintiff's APRI rose above a 2.0 at some point after November 2017, his APRI was below 2.0 upon testing in January 2018.  Defendants advised Plaintiff on his illness and treatment according to BOP policy, which, due to Plaintiff's APRI being below a 2.0, did not demonstrate an immediate need for treatment prior to his arrival at his designated facility, FCI Sheridan.  Plaintiff contends that Defendants "relied on old, outdated medical records" to determine that Plaintiff showed no signs of fibrosis or other tissue or liver damage.  Dkt. #14 at 16.  However, the record demonstrates otherwise, as Defendants consistently advised Plaintiff on treatment based on his updated APRI and BOP policy.  Furthermore, as Judge Peterson noted, Plaintiff was not denied all treatment related to his symptoms but only his desired treatment.  For example, Plaintiff states that in July 2018, he "went to sick call" concerning "having a tough time swallowing" and was referred to an outside Ear, Nose, and Throat Specialist, whom he saw in September 2018.  *Id*. at 17.  Plaintiff alleges no specific, actual, or substantial harm from delaying treatment until his arrival at FCI Sheridan but only potential harm based on untreated Hepatitis C, which "is vague and conclusory at best."  Dkt. #36 at 16.  Nothing in Plaintiff's Complaint demonstrates deliberate indifference or medically unacceptable treatment in conscious disregard of risks by Defendants in relying on BOP policy and Plaintiff's updated APRI scores to determine that waiting until Plaintiff was at his permanent location of FCI Sheridan for Hepatitis C treatment was a safe course of treatment.  The Court shall dismiss Plaintiff's Eighth Amendment claim.

//

//

## IV.    CONCLUSION

Accordingly, having reviewed the instant Motion, Plaintiff's Complaint, the responses and replies, if any, and the remainder of the docket, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss, Dkt. #52, is GRANTED.  Plaintiff's amended Complaint and this action are DISMISSED with prejudice.  The Clerk shall send a copy of this Order to Plaintiff and counsel for Defendants.

DATED this 24th day of February, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE